Robert W. BOWMAN and Robert W. Bowman, Executor of the Estate of Grace G. Bowman

v.

GENERAL MOTORS CORPORATION, Defendant-Third-Party-Plaintiff,

v.

Clyde E. RHODES, Third-Party-Defendant-Fourth-Party-Plaintiff,

v.

Robert W. BOWMAN, Fourth-Party-Defendant.

Civ. A. No. 71–2029.

United States District Court, E. D. Pennsylvania.

Aug. 23, 1974.

Avram G. Adler, Stanley P. Kops, Freedman, Borowsky &. Lorry, Philadelphia, Pa., for plaintiff.

George J. Lavin, Jr., Daniel J. Ryan, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

EDWARD R. BECKER, District Judge.

### I. *Preliminary Statement*

This is a products liability case in which plaintiffs contend that the 1966 Oldsmobile Toronado motor vehicle in which they were riding at the time of an accident on February 21, 1970, was defectively designed and insufficiently crashworthy. Before us is a discovery motion which presents a question oft recurring in automobile design product liability cases; i. e., the extent to which the plaintiffs may discover detailed factual information about the design and testing of models later than the one allegedly responsible for plaintiffs' injuries. Under F.R.Civ.P. 26(b)(1), we consider not whether the matters sought to be discovered will be admissible at trial, but whether they are reasonably

calculated to lead to the discovery of admissible evidence. The present motion seeks to compel defendant, General Motors Corporation (GM), to answer a number of specific interrogatories and to produce specified documents about the fuel storage system and nearby components in Toronado models from 1968 to the present. GM vigorously resists the proposed discovery, asserting that it is beyond the scope of discovery permitted by F.R.Civ.P. 26(b)(1). To understand these issues and our resolution of them, we must first set forth the history of this case and the factual allegations and legal theories advanced by the parties.

## II. *The Factual Background and Plaintiffs' Theories of the Case*

On May 22, 1970, the plaintiffs were injured when their vehicle, a 1966 Oldsmobile Toronado, was struck in the rear by a vehicle operated by the third-party defendant, Clyde E. Rhodes. The gasoline tank of plaintiffs' car exploded and caused the car to be consumed by fire. Before she could be extricated, Mrs. Bowman sustained severe burns over much of her body and Mr. Bowman was also injured.[1] On August 17, 1971, plaintiffs filed a complaint against GM demanding $2.5 million dollars in damages, and alleging breach of warranties, negligence, and liability under 402(A) of the Restatement of Torts. Since the filing of the complaint, substantial discovery has been conducted. On the basis of that discovery and their independent investigation, plaintiffs assert that the fire which followed the collision was the result of design defects and/or negligence in the manufacture of the fuel storage system and nearby components of the 1966 Toronado, which defects and/or negligence made plaintiffs' car uncrashworthy for a rear-end collision. More specifically, plaintiffs contend that the 1966 Toronado was defective in design due to: (1) the improper positioning of its fuel tank in relation to the rear bumper and/or to the passenger compartment; (2) the inadequacy in terms of composition, durability, strength, fire-resistance, non-flammability, dimensions, tolerances, resistance and stress factors of materials used in the fuel tank, its attachments, and interior parts of the 1966 Toronado, including the walls between the gas tank and passenger compartment and between the trunk and passenger compartment. Plaintiffs claim that some or all of these defects could have caused or aggravated their injuries. Plaintiffs also assert that defendant knew or should have known of the alleged defects in time to warn plaintiffs or to recall the vehicle.[2]

Although there has been dispute on a number of items, the defendant has generally answered plaintiffs' interrogatories and supplied requested documentary information pertaining to the 1966 Toronado and also to the 1967 Toronado, which defendant concedes to be a similar model. However, defendant has refused to supply similar information about the fuel storage system and nearby components in the Oldsmobile Toronados for 1968 to the present as requested by the plaintiffs.

The present motion seeks essentially the following. First, plaintiffs request identification of documents and information about any dealings that defendant had with any governmental body in regard to the construction, design, and performance of the gas tank, gas line, and/or wall between the gas tank and the passenger compartment, and/or the wall between the trunk compartment and the passenger compartment in the

---

1. Some three years after the accident, Mrs. Bowman died of cancer. Whether or not the injuries sustained in the accident contributed in any way to her death is a matter of dispute between the remaining parties.

2. Pretrial memoranda are yet to be filed; however, plaintiffs' theories have been advanced to the Court through counsel at a number of discovery conferences and hearings on motions.

1968 through 1971 Oldsmobile Toronados (interrogatories 5, 6, 7, 8, 9, 10, 11 and 12). Next, plaintiffs seek to learn whether any modifications were made in the Toronado from 1965 to the present respecting: (a) the gas tank; (b) the positioning of the gas tank; (c) the wall between the gas tank and the passenger compartment; (d) the contents of the compartment between the gas tank and the passenger compartment; and (e) the wall between the trunk compartment and the passenger compartment (interrogatories 15, 16, 17, 18, 19, 20, 22, 24 and 27). Plaintiffs also ask about the specifications, in terms of composition, durability, strength and fire resistance or non-flammability of the materials used within the 1966 Toronado models, concerning, for example, the seats and backs, the dashboard, coverings of the floor and interior trim (interrogatories 30, 31 and 32). They also seek specifications and any modifications thereto in terms of dimensions, tolerances, resistance and stress factors, susceptibility to impact damage, compositions, durability, strength and the like, on Toronado models from 1966 to the present in reference to: (a) the gas tank and its appurtenances (interrogatories 35 and 36); (b) the positioning and make of attachments to the gas tank (interrogatories 38 and 39); and (c) the walls and all inserts between the gas tank and the passenger compartment, and between the trunk and passenger compartment (interrogatories 40, 41 and 42). With regard to their claim of uncrashworthiness, plaintiffs seek information concerning whether the Toronado models in 1968 through 1971 were capable of being struck in the rear at 30 m.

p. h. with the tank at least 90% full without losing more than one ounce during impact, pursuant to S.A.E. recommended practice J850 (interrogatories 49, 50, 51, 52 and 53). Plaintiffs seek to discover what experience and claims, whether in litigation or otherwise, defendant has had with fires, damage, explosion, or spillage of gasoline from the gas tank or gas lines in the Toronados from 1966 to the present (interrogatories 58 and 59).[3] Finally, plaintiffs seek production of those materials not yet supplied by defendant in light of defendant's objections to the discovery concerning post-1967 Toronado models.

### III. *Discussion*

*Does F.R.Civ.P. 26(b)(1) Permit Discovery of Any Material Dealing with Post-1967 Toronado Models?*

Federal Rule of Civil Procedure 26(b)(1) provides in pertinent part:

(b) *Scope of Discovery.* Unless otherwise limited by order of court in accordance with these rules, the scope of discovery is as follows:

(1) *In General.* Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. . . . It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Defendant contends that "the subject matter involved in the pending action"

---

3. Plaintiffs also ask defendant to detail by number and description all patents owned by or available to GM on all types of gas tanks (interrogatory 55), and for defendant to give its position on whether there was and is anything in the design of the 1966 Toronado gas tank which made it more susceptible to the spillage or freeing of gas or vapors in the presence of fire than any other passenger vehicles then for sale (interrogatory 57). We find these two interrogatories overly broad, and therefore we will deny plaintiffs' motion to compel discovery as to these two interrogatories as drafted. In addition, we note that interrogatory 57 seeks a conclusion from defendant and is more in the nature of a Request for an Admission than an interrogatory.

is the performance of the fuel storage system and contiguous or nearby components on the 1966 Oldsmobile Toronado, as it performed in a rear end collision, and that the additional material now sought by the plaintiffs concerning post-1967 Toronado models is not relevant to the 1966 Toronado in question. In support of its argument, GM has supplied the affidavit of David L. Flesher, a GM automotive engineer. Mr. Flesher's affidavit asserts that the fuel tank assembly of the 1968 Oldsmobile Toronado and parts contiguous thereto are substantially different from the fuel tank assembly and contiguous portions of the immediately preceding model, the 1967 Oldsmobile Toronado. He concludes that no competent automotive engineer could evaluate the fuel system crash-worthiness in either the 1966 or the 1967 Toronado by analyzing and testing the 1968 Toronado because of numerous specific changes made, which changes Mr. Flesher details in the affidavit.

Plaintiffs, on the other hand, focus on that portion of Rule 26(b)(1) which in their view permits them to discover information concerning post-1967 Toronados "if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Plaintiffs note that as of May 22, 1970, when the accident in question occurred, the 1968, 1969 and 1970 Toronados had already been designed and produced. Plaintiffs also submit (and defendant does not deny) that as of that date the 1971 models had completed the design and test phase and were ready for production and that models for future years were by then on the drawing boards. Plaintiffs argue, therefore, that: (1) the design detail of post-1967 Toronados on the drawing board prior to the production of the 1966 model might have shown that the fuel storage system and nearby parts of the 1966 Toronado were defectively designed and unreasonably dangerous; (2) such information might bear upon the state of the art and the feasibility of making changes to the 1966 car, either at the time of its manufacture or by way of recall, up to the time of the accident; and (3) the information which GM had before May 1970 concerning post-1967 Toronado models either already produced or in design may have given defendant knowledge of a design defect or an unreasonable danger of which defendant failed to warn the plaintiffs.

We find plaintiffs' argument to be sound. Yet the viability of those arguments is not merely a function of their internal logic. They must also survive the impact of the Flesher affidavit which embodies defendant's contention that the sought-after discovery cannot lead to admissible evidence, since the post-1967 models are allegedly so different. However, we conclude from a careful reading of Mr. Flesher's affidavit that it fails to undercut the plaintiffs' contentions that it is important to the preparation of their case to discover changes within the Toronado family after the 1967 model was produced. Mr. Flesher notes numerous specific changes of a design nature in the fuel storage system and nearby parts of the post-1967 Toronado. However, he does not assert, as he presumably would have done had the facts supported it, a lack of similarity between the 1966 Toronados and those after 1967 in terms of: (1) the material used to manufacture the fuel system, its buffer walls and adjoining structures; or (2) the design relationship, including the distance between the fuel system, its buffer walls and adjoining structures; or (3) the engineering principles governing these components. Neither does Mr. Flesher's affidavit challenge plaintiffs' contention that there might have been changes in the design and manufacture of post-1967 Toronado models which warranted warning plaintiffs or recalling their 1966 models prior to the date of the accident in May 1970. Yet the foregoing matters

are the touchstone of plaintiffs' theory of the case.[4]

■ Since the plaintiffs' discovery claims survive the Flesher affidavit, we hold that plaintiffs may discover, within the framework of the interrogatories and production requests described at page, 65, *supra,* matters related to the design detail and testing of post-1967 Toronado fuel storage systems and nearby parts, limited, however, to matters known by or available to the defendant up to the time of the accident on May 22, 1970.[5] We permit such discovery because this information may lead to admissible evidence: (1) that the 1966 Toronado fuel storage system and nearby parts was defectively designed; (2) that it was feasible to design them in a way that was not unreasonably dangerous; or (3) that the defendant had knowledge prior to the accident that the fuel storage system and nearby parts in the 1966 Toronado model was unreasonably dangerous, yet defendant failed to warn plaintiffs, by recall or otherwise, of such danger. To exclude such discovery would be to permit the defendant alone to determine whether such information is relevant.[6]

4. In his affidavit, Mr. Flesher concludes that: (1) "the fuel tank assembly of the 1968 Oldsmobile Toronado and parts contiguous thereto are substantially different from the fuel tank assembly and contiguous portions of the immediately preceeding model, the 1967 Oldsmobile Toronado;" and (2) "no responsible, competent automotive engineer, given the task of evaluating fuel system crashworthiness in either the 1966 or the 1967 Toronado, could do so by analyzing and testing the 1968 Toronado." To buttress his conclusions, Mr. Flesher details 27 "specific changes" in the 1968 Toronado. Most of these specific changes indicate that the 1968 Toronado had a fuel storage system and contiguous parts which were new and not generally interchangeable with the comparable parts for the 1967 model. For example, he notes that the fuel tank assembly was new and the filler neck opening was at a different angle to accommodate the revised body contours and new rear bumper shape. He also specifies changes in the following: fuel gauge; fuel tank straps; exhaust system; rear bumber and rear panel design; and in the position of the rear lights and license plate lights. None of these specific changes, however, support Mr. Flesher's broader conclusions. Nor do they indicate that the information which plaintiffs seek concerning the post-1967 Toronado is not reasonably calculated to lead to admissible evidence. As discussed in the text above, we believe that Mr. Flesher's affidavit does not rule out the discoverability of information concerning: (1) possible design defects in the 1966 Toronado; (2) the feasibility of correcting them; and/or (3) the failure to warn plaintiffs before the accident about such defects or unreasonable dangers. In short, Mr. Flesher's affidavit does not directly address or refute plaintiffs' pivotal theories of this case.

5. We reject plaintiffs' request for matters which became known or available thereafter.

6. The documents which must be produced shall include: blueprints, drawings, diagrams, overlays and supporting data; correspondence originating or received by General Motors; inter-office memoranda; manuals, instruction books, and folios; test results and memorialization of meetings relating thereto; production reports and complaints relating thereto; governmental reports; trade organization reports; and all still photographs, motion pictures, slides and projections relating to the fuel supply system and nearby parts.

In objecting to plaintiffs' interrogatories and request for production of documents, defendant had claimed that complying with such discovery would create an undue burden. Defendant has not pressed this argument in its brief opposing plaintiffs' motion to compel discovery. However, we are not unmindful of defendant's concern about the difficulty of finding the information for answering these interrogatories in view of their voluminous nature and their age. While we have discretion under Rule 26(c) of the Federal Rules of Civil Procedure to protect the party from answering interrogatories or producing documents if it would prove unduly burdensome, we do not believe that the discovery which we are approving in the instant case creates such a problem. For one thing, defendant has already demonstrated that it can gather such information concerning the fuel supply system and nearby parts by model and year, since it has already done so in supplying such information to plaintiffs concerning the 1966 and 1967

■ The discovery rules in general and the definition of relevance under this rule in particular have been given a broad and liberal reading. *See* 4 Moore's Federal Practice § 26.56 [1] (2d ed. 1974). Furthermore, in supervising discovery, the district judge exercises broad discretion. *Id.* We underscore however that our ruling on the instant motion is no indication of whether any of the information discovered will later prove admissible as evidence in a trial. *See* Notes of Advisory Committee to F.R.Civ.P. 26(b)(1). In particular, we emphasize that the mere fact that plaintiffs may find information showing that GM manufactured a different fuel storage system in its post-1967 Toronados which proved to be safer is not necessarily admissible to prove the inference that the 1966 Toronado was either defectively designed or unreasonably dangerous, or that GM failed to warn of a known danger. Matters of automotive design are sophisticated and complex and there may be a plethora of explanations for changes in subsequent models.

The cases cited by defendant are either inapposite or distinguishable. Most of defendant's cases deal with information that developed subsequent to the accident in dispute. *See, e. g.,* Needles v. F. W. Woolworth Co., 13 F.R.D. 460 (E.D.Pa.1952) (remedial non-skid modifications and precautions taken after fall were not discoverable); Hammill v. Hyster Co., 42 F.R.D. 173 (E.D.Wis. 1967) (changes on similar machines made after accident are not discoverable); Reddick v. White, 295 F.Supp. 243 (S.D.Ga.1969) (instruction manual changes made after injury are not discoverable); Richards v. Maine Central

Railroad, 21 F.R.D. 590 (D.Me. 1957) (post-accident employment record of defendant's engineer irrelevant); *but cf.* M. S. A. Construction Co. v. Crafts, Inc., 58 F.R.D. 215 (E.D.Wis. 1973) (plaintiff could not discover brochures or documents emplaining reasons for changes made after the 1970 date of manufacture and delivery of the roofing material in question even though alleged injury from leaky roof occurred after 1970; nor could plaintiff discover reports on failure of same type of roofing in other cases); Handlos v. Litton Industries, Inc., 51 F.R.D. 23 (E.D.Wis. 1970) (alterations made to ammunition hoists not discoverable since interrogatories ask about changes made before date of alleged injury rather than before the date of manufacture). To the extent defendant's cases deal with discovery of information that came into existence *after* the accident in dispute, those cases are distinguishable from the instant case where we are approving discovery only to the extent that such information was in existence *before* the accident. While we cannot as readily distinguish the two opinions by Judge Gordon in *M. S. A. Construction Co.* and *Handlos, supra,* we find that the brief statement of facts and conclusions of those cases do not create generalized precedent that might otherwise strongly influence our conclusions.

■ The thrust of defendant's arguments stem from the general principle that "no act in the nature of repairs, improvement, substitution, or the like, done after the occurrence of an injury, is receivable as evidence of a consciousness (or, an 'implied admission'), on the part of the owner, of his negligence, conniv-

Toronado models. In addition, we believe that a large part of the burden created by the production of this information will have to be borne by the plaintiffs. Plaintiffs' counsel will have to sift through voluminous documents and other material in order to find either admissible evidence or items which may lead to further discovery and eventually to admissible evidence. Defend-

ant's burden should be limited to answering the questions and identifying the documents required by our order and providing plaintiffs with reasonable access to such documents. The production of these documents need take place only at Detroit, Michigan or such other place where the records may be stored.

ance, or other culpability in causing the injury." 2 Wigmore, Evidence § 283 at p. 158 (3d ed. 1940). But such a general rule deals with the admissibility of evidence at a trial. As we noted earlier, the ruling herein permitting discovery in no way requires us to permit the plaintiffs to use the information found in the course of this discovery as evidence at trial; we need only find that the information sought is reasonably calculated to lead to admissible evidence within the meaning of Rule 26(b)(1). Moreover, the general rule invoked by defendant has been limited by a variety of exceptions. Evidence of subsequent design modifications and indeed even post-accident precautions are admissible: (1) to refute the position that the existing condition was incapable of improvement, or to demonstrate that precautions were feasible before the injury; or (2) to show that a defendant knew or should have known of a reasonably foreseeable danger yet failed to give notice thereof. *See, e. g.,* Tyler v. Dowell, Inc., 274 F.2d 890 (10th Cir. 1960) (evidence that defendant changed oil well drilling equipment and design of nipple on its frack head after fire, held admissible in rebuttal to show feasibility of using larger nipple at check valve); Boeing Airplane Co. v. Brown, 291 F.2d 310 (9th Cir. 1961) (evidence of subsequent design modification in plane's alternator shaft admitted to show that such design changes and safeguards were feasible). *See also* 2 Wigmore, Evidence § 283 at Supp. 64 (3d ed. 1972 Supp.); Annot.; 64 A.L.R.2d 1296 (1959 and later case service); Proposed Federal Rules of Evidence § 407, 56 F.R.D. 183, 225–226 (1972) (and Advisory Committee's Notes thereto), suspended 86 Stat. 9 (1973) (but § 407 is unchanged in the House version, H.R. 5463, 93rd Cong., 1st Sess. (1973)).

Three of the cases cited by defendant also make the point that information concerning equipment *different* from that involved in the law suit is neither discoverable nor admissible as evidence, quite aside from whether the information was compiled before or after the injury. *See* Frey v. Chrysler Corporation, 41 F.R.D. 174 (W.D.Pa.1966); Uitts v. General Motors Corporation, 58 F.R.D. 450 (E.D.Pa.1972) (hereinafter *Uitts I*); Uitts v. General Motors Corporation, 62 F.R.D. 560 (E.D.Pa.1974) (hereinafter *Uitts II*). In *Frey,* plaintiff requested information concerning the use by the defendant of an accelerator linkage assembly of the same "type" as that installed in the plaintiff's vehicle. While the court found the wording of the plaintiff's interrogatory too vague to aid in the pinpointing of issues in the action before it, it noted that "where the party asks a question as to a particular or specified linkage assembly, the interrogatory is proper." Accordingly, the court limited plaintiff's interrogatories to finding information concerning "the same throttle linkage assembly" and required defendant to answer such interrogatories. In *Uitts I,* our colleague Judge Huyett permitted discovery concerning accidents subsequent to the accident in dispute to the extent that such subsequent accidents involved identical equipment (*i. e.,* a left front spring main leaf in GM vehicles) and was relevant to the determination of causation. In *Uitts II,* Judge Huyett refused to permit discovery concerning a recall campaign because the campaign did not involve the same model vehicle as the one in question. However, *Uitts II* is distinguishable from the present case in that Judge Huyett found conclusively that the recall campaign involved vehicles that did not have the left front spring involved in the case before him.

While the *Frey* and *Uitts* cases confine discovery to equipment that is "the same" or "identical," we note that identity is a function not only of component parts, but also of engineering principles. We eschew a narrow construction of the notions of similarity and identity in this case, for under the cir-

cumstances here it would foreclose meaningful discovery. Rulings under the Federal Rules of Civil Procedure are discretionary with the court in light of the totality of the circumstances. *See* 4 Moore's, Federal Practice § 26.56 [1] at p. 26–135 (2d ed. 1974). *Cf.* DiFrischia v. New York Cent. R.R. Co., 307 F.2d 473 (3d Cir. 1962) (". . . the occurrence of similar accidents is admissible, in the sound discretion of the trial judge, for the purpose of establishing . . . , (2) their cause, (3) the imputation of notice to the owner of the place where they occurred, and (4) the likelihood of injury."). We do not disagree with the conclusions reached in *Frey* and in the *Uitts* cases on their facts. However, in the case at bar, we find that information concerning post-1967 Toronado fuel supply systems and nearby parts may lead to admissible evidence concerning defects or unreasonably dangerous characteristics and the feasibility of correcting them and of knowledge (and consequent failure to warn) by GM of such conditions in the 1966 Toronado before plaintiffs' accident in May 1970.

One case which we have found is very nearly on point and another one cited by defendant supports out conclusion that in some cases information concerning different models may be reasonably calculated to lead to admissible evidence. In Lindberger v. General Motors Corporation, 56 F.R.D. 433 (W.D.Wis.1972), Judge Doyle permitted discovery of information concerning changes which were made in the design or malfunction warning system of the brakes on a GM front end loader subsequent to its manufacture. Judge Doyle found such discovery "relevant" and "not privileged" under Rule 26(b)(1); he noted that it might lead to admissible evidence of feasibility or knowledge involved in plaintiff's suit based on negligence, breach of warranties and/or products liability theories. And, in Hammill v. Hyster Company, 42 F.R.D. 173 (E.D.Wis.

1967), the court permitted plaintiff to discover tipping incidents regarding any model Hyster Karry Krane, even though they related to other than the model involved in the case at bar. In *Hammill*, discovery was confined to the tipping incidents on or before the date of the accident in that case. That is what we do here.