XEROX CORPORATION, Plaintiff,

v.

INTERNATIONAL BUSINESS
MACHINES CORPORATION,
Defendant.

INTERNATIONAL BUSINESS
MACHINES CORPORATION,
Plaintiff,

v.

XEROX CORPORATION, Defendant.

Nos. 70 Civ. 1596, 73 Civ. 3421, 76
Civ. 2345–DNE.

United States District Court,
S. D. New York,
Civil Division.

May 2, 1977.

See also, D.C., 64 F.R.D. 367, D.C., 399 F.Supp. 451.

Brumbaugh, Graves, Donohue & Raymond, New York City, for Xerox Corp.

Fish & Neave, New York City, for International Business Machines Corp.

## OPINION

EDELSTEIN, Chief Judge:

Xerox Corporation [hereinafter Xerox] has moved this court for an order pursuant to Rule 37(b) of the Federal Rules of Civil Procedure [hereinafter Fed. R. Civ. P.] imposing sanctions against International Business ·Machines Corporation [hereinafter IBM] for failure to comply with certain of this court's orders entered earlier in these consolidated litigations. Specifically, Xerox alleges IBM's failure to comply with court orders dated July 23, 1974, October 25, 1974, June 9, 1976, September 17, 1976, December 5, 1975, and March 7, 1972, and now seeks an order taking as established facts that "information identified by Xerox on April 9, 1976 as its trade secrets and confidential information misused by IBM . . . was used by IBM in its xerographic office copier programs." [1]

At the heart of the dispute presented in this motion are Xerox Interrogatories 1–9 propounded on August 10, 1973, and related Xerox Requests for Documents 1–3 propounded on December 11, 1973. [2] Pursuant to Special Master Orders 1 and 2 and agreement between the parties, the Special Master was authorized to consider and issue recommendations concerning IBM's objections to Xerox Interrogatories 1–9.

In an opinion dated July 23, 1974, [3] this court directed Xerox to identify in detail all trade secrets allegedly misappropriated by IBM. The court stated that

> until [that] is done, neither the court nor the parties can know, with any degree of certainty, whether discovery is relevant or not; and it is doubtful wheth-

er Xerox can undertake a meaningful discovery program, which includes its attempt to trace the flow of trade secrets and confidential information through IBM, without first identifying which trade secrets and what confidential information IBM has misappropriated. [4]

On October 7, 1974, the Special Master, having considered objections set forth by IBM to Interrogatories 1–9, submitted a report and recommendation in which he concluded that until Xerox had complied with the July 23, 1974 order of the court and completed its trade secret identification, "no useful purpose would be served by IBM's answering [those interrogatories]." In dealing specifically with IBM's objection that Interrogatories 1–9 called for information not relevant to the subject matter of the litigation, the Special Master referred to the court's opinion of July 23, 1974, which adopted the Special Master's recommendation that IBM was to "permit witnesses to answer questions concerning marketed and unmarketed products which bear any relevance to the materials contained [in Xerox's trade secret identification.]" [5] However, if IBM persisted in its objection concerning relevancy even in light of the above ruling, the Special Master provided a procedure for IBM to follow.

This procedure was accepted by the court as part of Special Master Order No. 7. That order, entered October 25, 1974, directed IBM to "furnish to the Special Master a memorandum noting each item called for by [Interrogatories 1–9] it claims to be irrelevant in light of the Special Master's Report and Recommendation." IBM was ordered to submit such a memorandum within fifteen days of service by Xerox of its trade secret identification.

---

1. *See* Xerox Memorandum in Support of the instant motion at 16–17 [hereinafter Xerox Memorandum]. The court is authorized to impose such a sanction by Fed. R. Civ. P. 37(b)(2)(A).

2. The orders with which Xerox claims IBM has failed to comply discuss Xerox Interrogatories 1–9. However, Document Requests 1–3 are related to those interrogatories and have been

and shall here be considered together with those interrogatories.

3. *Xerox Corp. v. International Business Mach. Corp.*, 64 F.R.D. 367 (S.D.N.Y.1974).

4. *Id.* at 371–72.

5. *See id.* at 370.

Although Xerox had been initially directed to furnish its trade secret identification within 90 days of the court's opinion of July 23, 1974,[6] pursuant to subsequent extensions of that time period, Xerox submitted its detailed identification of trade secrets on April 9, 1976. This submission initiated the period in which IBM could raise claims of relevancy under Special Master Order No. 7. On June 9, 1976, this court granted IBM an extension until July 9, 1976 to submit its memorandum to the Special Master setting forth its claims of relevancy. IBM submitted a memorandum on that date, and on July 26, 1976, Xerox submitted its memorandum in response to IBM's objections to Interrogatories 1–9 and related document requests.

IBM's objections involve the question of the scope of discovery to which it believes Xerox is entitled by virtue of the subject matter of these litigations. Xerox, in its memorandum, opposes IBM's interpretation of the proper scope of discovery.

On August 16, 1976, the Special Master held a conference with respective counsel at which time both sides elaborated on the arguments contained in their memoranda. It is apparent from the transcript of that conference that the Special Master intended to reserve any recommendation he might make concerning the parties' dispute as to the proper scope of discovery until such time as IBM had completed its document production and made its final response to Interrogatories 1–9. At such time, if the parties still disputed the question of relevancy, the matter could be renewed.[7] IBM made its final response to Interrogatories 1–9 on October 26, 1976, at which time IBM reiterated the objections contained in its July 9, 1976 memorandum.

IBM has directed its responses to Interrogatories 1–9 to IBM's xerographic office copier activities. Xerox, however, seeks broader discovery, contending that it is entitled to information as to all IBM activities in xerography, whether they relate to office copiers or non-office copiers.[8] Xerox seeks such broader discovery as a part of its effort to "establish, as one phase of its proof of misuse by IBM, the flow into the IBM office copier programs of Xerox trade secret information from non-office copier projects . . . ."[9]

Fed. R. Civ. P. (26)(b)(1) states in part that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . ."

In order to provide both parties with the information necessary to a full elicitation of the facts, the scope of discovery permitted by the Federal Rules of Civil Procedure must be liberally construed. *Mallinckrodt Chemical Works v. Goldman, Sachs & Co.*, 58 F.R.D. 348, 352–53 (S.D.N.Y.1973), quoting *Patton v. Southern Bell Telephone & Telegraph Co.*, 38 F.R.D. 428 (N.D. Ga.1965), citing *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L. Ed. 451 (1947) and 4 J. Moore, Federal Practice ¶ 26 [now ¶ 26.55] (2d ed. 1970).

Moreover, as the court stated in *Mallinckrodt Chemical Works v. Goldman, Sachs & Co.*, supra at 353:

Rule 26(b)(1) makes it clear that admissibility at trial is not a limitation on discovery provided that "the information sought appears reasonably calculated to lead to the discovery of admissible evidence." The sweeping scope of this language led one distinguished commentator to suggest that "discovery should be relevant where there is *any possibility* that the information sought may be relevant to the subject matter of the action."

---

6. *Id.* at 372.

7. *See* Transcript of Conference before the Special Master dated August 16, 1976, at 54–55. The date set for IBM to complete production as of that conference was September 10, 1976. By order of the court of September 17, 1976, the date for final production was extended to October 29, 1976.

8. The nature of the dispute is discussed in Xerox Memorandum at 4–10 and in IBM's Memorandum in Opposition to the instant motion at pages 3–10 [hereinafter IBM Memorandum].

9. Xerox Memorandum at 9.

C. Wright, *Law of Federal Courts* § 81, at 359 n. 47 (2d ed. 1970) (emphasis added).

■ Applying this standard, the court concludes that Xerox is entitled to discovery as to IBM's non-office copier projects in xerography.

The court does not accept IBM's contention that logic [10] and Xerox's own words that contrary to agreements between Xerox and IBM, IBM has used Xerox trade secrets and confidential information "in connection with xerographic office copiers" properly permits IBM to limit discovery to information relating to xerographic office copiers. [11]

■ While making this determination, the court is keenly aware that the issue of the scope of discovery to which Xerox is entitled has prior to the present motion been before the Special Master for his consideration. However, the court is constrained to remove the matter from the consideration of the Special Master because of what the court deems to be at this time an unnecessary expense of time and resources. The passage of more than three years since these interrogatories and related document requests were propounded, leading to the present state wherein the parties are still embroiled in a controversy as to the appropriate scope of discovery, is a situation which the court can no longer tolerate. The Special Master has been diligent throughout in trying to resolve the parties' disputes concerning these interrogatories and related document requests. For the court, however, to permit the parties to renew their present dispute before the Spe-

cial Master would in the court's opinion be to allow them to abuse and exploit the Special Master process.

Therefore, IBM is directed to make further production to Xerox in response to Interrogatories 1–9 and Document Requests 1–3, which production shall include information relating to IBM's non-office copier projects in xerography at all IBM facilities. [12] IBM shall make such production within 60 days of the entry of this order.

Two additional disputes are raised by the instant motion. First, Xerox alleges that IBM has failed to comply with this court's orders of June 9, 1976 and September 17, 1976 by not completing production within the allotted time period. IBM argues that it is in full and timely compliance with those orders. In view of the fact of the dispute between Xerox and IBM concerning relevance, the court refrains at this time from any determination as to whether IBM's production to Xerox has been timely. Should any delay occur with respect to compliance with the orders herein, however, the court will scrutinize closely the circumstances surrounding such delay and impose sanctions where appropriate.

The final issue raised by the Xerox motion deals with the attempt by IBM to limit the initial inspection of certain of IBM's documents to Xerox's outside counsel only. The material to which IBM seeks to limit inspection includes, in IBM's words, "some papers which are not relevant, some which are marginally relevant, and some which may be subject to a claim of attorney-client privilege or work product." [13] IBM states

---

**10.** IBM Memorandum at 6–7.

**11.** IBM sets forth several examples of statements by Xerox to this effect in support of its argument. In addition IBM cites to Xerox's definition of "IBM Copier" in Paragraph F of Xerox's Interrogatories 1–9 as precluding from that definition "a machine specially designed for use in connection with data processing machines," as expressly proscribing the scope of discovery. IBM Memorandum at 2–5. A reading of those interrogatories, however, indicates that not all are limited to "IBM Copiers."

**12.** Xerox has asserted that IBM has failed in its production to produce documents from its files

in San Jose. IBM contends the San Jose location has not been excluded. Xerox Memorandum at 6–8; IBM Memorandum at 8. Without making any finding regarding that particular dispute, the court wishes to make it clear that IBM may not exclude production from IBM facilities wherein responsive material is located.

**13.** IBM Memorandum at 13. For a more detailed account of the colloquy between the parties on this point see IBM's Final Response to Xerox Request for Documents 1–3 and Interrogatories 1–9, dated October 26, 1976, at 2–3 & Appendix F.

further that "[m]any of the irrelevant documents contain information relating to highly sensitive aspects of IBM's business which have nothing whatsoever to do with xerographic office copiers."[14]

Xerox contends that IBM's attempt to limit inspection to outside counsel only is a violation of the Protective Order entered on December 5, 1975 and of the Stipulation and Order relating to Privileged and Work Product Documents, dated March 7, 1972.[15]

The court has previously determined that IBM's responses to Interrogatories 1–9 are not properly limited to information concerning xerographic office copiers. To the extent then that IBM's claim of irrelevance comes within that determination of the court, it is rejected. Apart from the above statement by IBM concerning irrelevance, IBM's claim is stated in conclusory terms and fails to persuade the court that the claim should be upheld.

 IBM's attempted limitation on inspection does not properly address itself to the concerns which it asserts as reasons for the necessity of such limitation. As the court understands it, IBM's preference for inspection rather than production stems from its feeling that production of the material involved will result in a great deal of wasteful time and expense since it may be that Xerox would find much of the material of little or no benefit to it. Moreover, IBM is concerned with the difficulty of making xerographic copies of some of the material, and that some of the information is unintelligible. But it does not follow from this that inspection should be limited to Xerox's

outside counsel only. IBM may invoke the protection for confidential information of the Protective Order of December 5, 1975, and, for matter falling within a claim of attorney-client privilege or work product protection, may invoke the procedures of Judge McLean's Order as adopted by this court and the Stipulation and Order regarding such material. IBM's limitation on inspection is not warranted, and the court rejects such limitation.[16]

IBM is therefore directed to provide Xerox with material responsive to Xerox Interrogatories 1–9 and Requests for Documents 1–3. Because of the concerns of IBM regarding production of this material to Xerox as a first step and Xerox's apparent willingness to inspect the material,[17] the information shall be made available to Xerox for inspection initially. Thereafter Xerox may require production from IBM of the matters it desires.

Xerox's motion for the imposition of sanctions is denied, except to the extent other relief has been granted and to the extent the court has determined to reserve on the matter in the event sanctions are deemed appropriate at some future time.

Xerox's request for costs and attorneys' fees is denied.

So ordered.

14. IBM Memorandum at 13.

15. While both Xerox and IBM in their respective memoranda on this motion refer only to the Stipulation and Order dated March 7, 1972, the court notes that with respect to the manner in which documents falling within a claim of attorney-client privilege or work product are to be dealt with, that Stipulation and Order must be read together with the Order of Judge McLean, dated on February 8, 1972, as adopted by this court.

16. The court is aware that at an earlier time, a "counsel only" limitation was placed on the inspection by IBM of Xerox documents which

Xerox had previously produced to the Federal Trade Commission. Nothing IBM sets forth persuades this court that the circumstances surrounding the procedure for inspection of the "FTC" documents render that procedure a sound precedent for limiting inspection of the material in issue here.

17. The court notes that Xerox has apparently never objected to inspection itself. Rather Xerox's objection is directed at IBM's attempt to place an outside counsel only limitation on inspection. *See* Xerox Memorandum at Appendix F.