Timothy **CULLIGAN**, **Plaintiff**,

v.

**YAMAHA MOTOR CORPORATION, USA and Yamaha Motor Company, Ltd., Defendants.**

**No. 85 Civ. 3272 (RO).**

United States District Court, S.D. New York.

April 21, 1986.

David Jaroslawicz, Myra E. Shapiro,
New York City, for plaintiff.

Robert W. Littleton, Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, for defendants.

## MEMORANDUM AND ORDER

JAMES C. FRANCIS, IV, United States Magistrate.

This product liability action arises out of an accident involving an All-Terrain Vehicle ( "ATV" ) manufactured and distributed by the defendants (collectively referred to as "Yamaha" ). The plaintiff, Timothy Culligan, alleges that he was injured in March, 1985, when the Model YT–225 Yamaha ATV that he was riding flipped over. He contends both that this vehicle was inherently unstable and therefore defective and that Yamaha failed to provide appropriate warnings regarding its use. Complaint ¶ 13. The case has been referred to me for all pre-trial purposes.

Yamaha now moves for a protective order exempting from discovery three categories of documents requested by the plaintiff. The first category of documents sought to be protected includes information about testing, research, and development on Yamaha ATV's that took place after the manufacture of the model at issue here. Second, Yamaha seeks to exempt from discovery similar information with respect to tests done on models other than the Model YT–225 prior to the manufacture of that model. Finally, Yamaha asks to withhold all communications between the defendant corporation and the Consumer Products Safety Commission. With respect to each of these categories, Yamaha requests, as alternative relief, that any information disclosed be placed under seal and opened only upon order of the Court.

For the reasons that follow, none of the information sought by the plaintiff is exempt from disclosure. However, insofar as confidential trade secret information may be involved, an order of confidentiality is appropriate, as outlined below.

*Post-Manufacture Testing*

A. *Relevance*

Yamaha objects to disclosure of research and development information regarding subsequent vehicle models both on grounds of relevance and on grounds of confidentiality. As Yamaha argues, evidence concerning post-manufacture testing and design changes may be inadmissible at trial, at least with respect to certain issues. *Cover v. Cohen,* 61 N.Y.2d 261, 270–71, 473 N.Y.S.2d 378, 382–83, 461 N.E.2d 864, 868–69 (1984). It is well-settled, however, that discovery is not limited to information that will be admissible at trial. *See, e.g., Stark v. Photo Researchers, Inc.,* 77 F.R.D. 18, 20 (S.D.N.Y.1977); *Xerox Corp. v. IBM Corp.,* 75 F.R.D. 668, 670 (S.D.N.Y.1977). Rather, in the context of discovery, relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978).

■ Here, there are three respects in which the requested information about post-manufacture testing is clearly relevant. First, data could assist the plaintiff in developing evidence which would establish that the ATV in question was in fact defective. *Bowman v. General Motors Corp.,* 64 F.R.D. 62, 68 (E.D.Pa.1974); *Lindberger v. General Motors Corp.,* 56 F.R.D. 433, 435 (W.D.Wisc.1972). Such information would be relevant even though it may deal with models other than Model YT–225, unless it is demonstrated that the other models are so dissimilar that testing information for them would not be likely to lead to evidence germane to the defect alleged in this case. *Uitts v. General Motors Corp.,* 58 F.R.D. 450, 452 (E.D.Pa. 1972). Here, no such showing has been made.

■ Second, post-manufacture research is relevant to the feasibility of alternative designs that the manufacturer might have utilized. *Bowman v. General Motors Corp.,* 64 F.R.D. at 68; *Lindberger v. General Motors Corp.,* 56 F.R.D. at 435. Again, even if such information were not

itself admissible, there is a strong likelihood that it will lead to admissible evidence. For example, if plaintiff were to learn that Yamaha had manufactured subsequent models with a design change intended to increase stability, it could then explore whether such a change had been feasible at the time that the Model YT–225 was manufactured.

■ Third, the requested information is central to the issue of Yamaha's alleged failure to warn consumers of the ATV's instability. As to this issue, post-manufacture testing data is not only relevant, it is also admissible. *Martell v. Boardwalk Enterprises, Inc.*, 748 F.2d 740, 47–49 (2d Cir.1984); *Cover v. Cohen*, 61 N.Y.2d at 274–77, 473 N.Y.S.2d at 385–86, 473 N.E.2d at 870–71. Indeed, Yamaha concedes as much. Affidavit of James P. Donovan dated February 14, 1986 at para. 12.

### B. *Confidentiality*

■ The party seeking a protective order has the burden of proof. *Penthouse International, Ltd. v. Playboy Enterprises, Inc.*, 663 F.2d 371, 391 (2d Cir.1981); *Koster v. Chase Manhattan Bank*, 93 F.R.D. 471, 479 (S.D.N.Y.1982). Thus, when a party asserts that discovery will cause competitive injury because of the revelation of trade secrets, it cannot generally rely upon conclusory statements, but must present evidence of specific damage likely to result from disclosure. *Id.* at 479; *United States v. IBM Corp.*, 67 F.R.D. 40, 46–47 (S.D.N.Y.1975); *Rosenblatt v. Northwest Airlines, Inc.*, 54 F.R.D. 21, 22–23 (S.D.N.Y.1971). Here, Yamaha has presented no more than assertions by counsel, unsupported by evidence, that disclosure of the requested information would cause competitive injury.

■ Nevertheless, as the court stated in *Zenith Radio Corp. v. Matsushita Electric Industrial Co.*, 529 F.Supp. 866, 891 (E.D. Pa.1981), "[f]requently the injury that would flow from disclosure is patent, either from consideration of the documents alone or against the court's understanding of the background facts." Here, the material requested includes research and development data concerning product design. Expert testimony is hardly necessary to conclude that disclosure of such information to a competitor may be detrimental, since it would reveal the fruits of Yamaha's research, reducing both the competitor's costs and the time needed to market competing products. At least some of the requested information, then, constitutes trade secrets eligible for protection.

■ In order to gain access to such information, the party seeking discovery must show that it is relevant and necessary. *Centurion Industries, Inc. v. Warren Steurer and Associates*, 665 F.2d 323, 326 (10th Cir.1981); *Triangle Ink and Color Co. v. Sherwin-Williams Co.*, 61 F.R.D. 634, 636 (N.D.Ill.1974). For the reasons stated above, the requested material is plainly relevant, and "[a] showing of relevance can be viewed as a showing of need...." *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1341 (D.C.Cir.1984). Here, Yamaha has not conceded that the ATV Model YT–225 is defective, nor that design modifications are feasible, nor that it had knowledge of a defect that would create a duty to warn consumers. Post-manufacture testing information is an important component in the plaintiff's trial preparation on each of these issues, and disclosure of this information is therefore necessary.

Two factors support the conclusion that this need outweighs any possible injury to Yamaha. First, the plaintiff is not a competitor, and has no interest in the research data except as it relates to this case. Second, an appropriate confidentiality order can fully protect Yamaha's interest in shielding its research information from its competitors. Such orders are widely used in connection with both sensitive technical data, *see, e.g., Triangle Ink and Color Co. v. Sherwin-Williams Co.*, 61 F.R.D. at 636 (technical trade secrets disclosed to opposing counsel and independent experts); *Johnson Foils, Inc. v. Huyck Corp.*, 61 F.R.D. 405, 410–11 (N.D.N.Y.1973) (patent

information disclosed to opposing attorneys and technical advisors); *Scovill Manufacturing Co. v. Sunbeam Corp.*, 61 F.R.D. 598, 602 (D.Del.1973) (patent information disclosed to opposing attorneys), and confidential business information, *see, e.g., Cipollone v. Liggett Group Inc.*, 106 F.R.D. 573, 585–86 (D.N.J.1985) (confidential information released to opposing counsel for use in other cases); *Chesa International, Ltd., v. Fashion Associates, Inc.*, 425 F.Supp. 234, 237 (S.D.N.Y.1977), *aff'd*, 573 F.2d 1288 (2d Cir.1977) (customer lists disclosed to opposing counsel). An appropriate confidentiality order is included at the conclusion of this memorandum.

### Pre-Manufacture Testing

■ Yamaha objects to disclosure of testing data on models that preceded the Model YT–225 on the same grounds of relevance and confidentiality that it asserted in resisting discovery of post-manufacture testing information. For the reasons set forth above, these objections are without merit. Yamaha also argues that data concerning models other than that at issue here can have no relevance. However, discovery of similar, if not identical, models is routinely permitted in product liability cases. *See, e.g., Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 617 (5th Cir.1977), *cert. denied*, 436 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978); *Swain v. General Motors Corp.*, 81 F.R.D. 698, 699–700 (W.D. Pa.1979); *Uitts v. General Motors Corp.*, 58 F.R.D. at 452. Since Yamaha has failed to demonstrate any pertinent differences between Model YT–225 and other ATV models, discovery as to these other models is entirely appropriate. *Swain v. General Motors Corp.*, 81 F.R.D. at 699–700.

■ Finally, Yamaha complains that responding to discovery requests concerning pre-manufacture testing will prove burdensome. Yamaha provides no support, however, for this conclusory allegation, and its objection must therefore be rejected. *In re Halkin*, 598 F.2d 176, 193 (D.C.Cir.1979). There is thus no basis for issuing a blanket protective order with respect to pre-manufacture testing information.

### Communications with the CPSC

■ The plaintiff has requested disclosure of communications between Yamaha and the Consumer Product Safety Commission ("CPSC"). Although Yamaha has produced those documents that it received from the CSPC, it continues to resist disclosure of material that it sent to that agency. On one hand, Yamaha argues that non-confidential documents can be obtained by the plaintiff through a request pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). On the other hand, it claims that it turned over some information to the CPSC in reliance on its understanding that the material would be kept confidential. Neither of these contentions is persuasive.

#### A. Alternative Means of Discovery

Once civil litigation has been commenced, it is rare for a court to require a party to pursue discovery through means other than those contemplated by the Federal Rules of Civil Procedure. For example, in *Federal Trade Commission v. Bramman*, 54 F.R.D. 364, 366 (W.D.Mo.1972), the court did not require the defendant to exhaust agency procedures for release of information before proceeding with discovery. Similarly, in *Kleinerman v. United States Postal Service*, 100 F.R.D. 66, 68–69 (D.Mass.1983), the court did not suspend discovery pending the outcome of the FOIA action in which plaintiff sought the same material. The court observed that "[i]t would indeed be anomalous if this Court permitted the defendants to use FOIA, a disclosure statute, as a shield to avoid discovery in a separate civil suit." *Id.* at 69. The court went on to note that discovery might obviate the need for pursuing the FOIA case, thus serving the interests of judicial economy. *Ibid.*

As in these cases, there is no justification in the instant action for requiring the plaintiff to file an FOIA request in order to obtain information concededly in the possession of Yamaha. First, Yamaha has provided no evidence that disclosure of the

requested material would be unduly burdensome. Second, the cost to the plaintiff—in terms of time and expense—could be substantial. Indeed, if the CPSC were to fail to respond or if its responses were inadequate, the plaintiff would need to commence a separate civil action under FOIA to obtain the information. Finally, initiating a collateral discovery procedure of any type in this case would only delay a final resolution.

### B. *Confidentiality*

 Apparently relying on 15 U.S.C. § 2055, Yamaha also argues that some of the information that it sent to the CPSC is confidential and exempt from disclosure. This statute governs dissemination of information by the CSPC, and states in pertinent part that "[a]ll information reported to or otherwise obtained by the Commission ... which information contains or relates to a trade secret ... shall be considered confidential and shall not be disclosed." 15 U.S.C. § 2055(a)(2). However, "[s]tatutes insulating information from publication are aimed at the broadcasting of sensitive information to the general populace; the statutes are not intended to enjoin the limited kind of disclosure encountered in judicial proceedings." *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d at 1344. Thus, such statutes act as a "floor": information available under the statute's criteria is also likely to be available through discovery, but information that the statutes require the agency to keep confidential may nevertheless be subject to disclosure in litigation. *Ibid.* Thus, although Yamaha could reasonably expect that its communication of trade secrets to the CPSC would not be disseminated by that agency, it could not expect that those communications would be insulated from the discovery process. CPSC policies of confidentiality, then, provide no greater protection for the disputed documents than they otherwise have as trade secrets. Like the pre-manufacture and post-manufacture testing information, these documents shall be subject to an appropriate confidentiality order.

### *Conclusion*

For the foregoing reasons, Yamaha's application to have the requested documents exempted from disclosure is denied. Its alternative request that the documents be placed under seal is not workable and, in any event, these documents would not be filed with the court in the normal course of discovery. In lieu of such a procedure, the requested documents shall be produced by Yamaha within twenty (20) days of the date of this order, subject to the following conditions:

1. Yamaha may mark as confidential any document that it believes, in good faith, to contain trade secrets. All documents so marked shall be disclosed only to counsel for plaintiff who shall not further disseminate them except as provided herein and shall utilize them only for the purposes of this litigation.

2. If plaintiff's counsel wishes to provide documents marked confidential to other persons in connection with trial preparation, they shall provide ten (10) days notice to Yamaha's counsel. Yamaha may then move to prevent such disclosure and no disclosure shall be made pending determination of the motion. If no motion is made prior to the expiration of the ten day notice period, plaintiff's counsel may make disclosure in the manner described in the notice.

3. A copy of this order shall be provided to all persons to whom confidential documents are disclosed, and these persons shall be subject to its terms.

Plaintiff's application for costs and attorneys' fees in connection with this motion is denied without prejudice and may be renewed after discovery has been completed.

SO ORDERED.