**QUOTRON SYSTEMS, INC., Plaintiff,**

v.

**AUTOMATIC DATA PROCESSING, INC. and Smith Barney, Harris Upham & Co., Inc., Defendants.**

**No. 91 Civ. 6526 (RPP).**

United States District Court, S.D. New York.

Feb. 12, 1992.

---

Proskauer Rose Goetz & Mendelsohn, New York City by Ronald S. Rauchberg, Charles S. Sims, for plaintiff.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City by Allan J. Arffa, Robert E. Goudie, for defendants.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

In this action for damages and injunctive relief, Quotron Systems, Inc. ("Quotron") alleges copyright infringement and misappropriation of trade secrets by Automatic Data Processing, Inc. ("ADP") and Smith Barney, Harris Upham & Co. ("Smith Barney"). Quotron now moves pursuant to Fed.R.Civ.P. 37(a) and 26(c) for entry of a protective order in a form proposed by Quotron, effective as to all documents produced by ADP in this action. ADP cross-moves to quash subpoenas served by Quotron on non-parties Bear Stearns & Co. ("Bear Stearns") and Oppenheimer & Co. ("Oppenheimer") and to have its proposed protective order, rather than the order proposed by Quotron, entered by this Court. Oral argument on the motions was heard on February 6, 1992.[1]

## DISCUSSION

1. Quotron's Motion for Entry of Protective Order

Quotron alleges that ADP and Quotron have attempted but have been unable to agree on the proper scope of any protective order to be entered in this case. On December 13, 1991, pending resolution of this disagreement, Quotron and ADP signed an interim agreement governing ADP's production of documents in this case ("the interim agreement"). Under the interim agreement, all documents produced by

ADP, and all information contained in such documents, may be reviewed by and disclosed and disseminated only to attorneys at Proskauer Rose Goetz & Mendelsohn and their legal assistants, and Quotron's retained expert, Andrew Johnson Laird. The interim agreement remains effective "unless and until a confidentiality stipulation and order, or other agreement superseding this interim agreement" is executed by the parties or entered by the Court. A clause was added providing that "[i]f, following a reasonable period of time, no such agreement has been reached, the parties shall apply to the Court to resolve any outstanding confidentiality disputes." Quotron Jan. 2, 1992 Letter, Exh. 2.

Quotron's proposed protective order would limit disclosure of confidential documents to not more than three employees designated by each of the parties, in addition to outside counsel and in-house counsel preparing for the trial of this action and their support staff, independent experts, and court reporters. The order would provide access to these persons only on condition that (a) they sign confidentiality agreements limiting use of information obtained to the litigation and (b) such access is limited to inspecting the documents on the premises of outside counsel or qualified experts. Quotron's proposed order defines the sort of information that may be designated "Confidential." Quotron Jan. 2, 1992 Letter, Exh. 1.

ADP's proposed protective order provides for a "Highly Confidential" category of documents. The order does not define this category, but instead provides that a producing party or nonparty may designate any document or other item to be produced "Highly Confidential" by so stamping it. Access to such documents, as well as the information contained therein, is limited to counsel working for or retained in connection with this litigation and their support staff, and approved outside experts. ADP Jan. 15, 1992 Letter, Exh. J.

1. Due to the confidential nature of many of the issues discussed in the papers submitted in connection with these motions and the exhibits attached thereto, both ADP and Quotron made their motions in the form of letters to this Court which have not been filed with the Clerk of the Court.

■ In the production of documents to date, Quotron accuses ADP of restricting Quotron's ability to prepare for trial by overdesignating documents "Highly Confidential." Quotron Jan. 2, 1992 Letter at 3. In its letter of January 15, 1992, and at oral argument it became apparent that ADP had unnecessarily stamped documents "Highly Confidential." ADP Jan. 15, 1992 Letter at 20. Indeed, at oral argument, ADP offered to reclassify the documents it produced in order to remove from the "Highly Confidential" category any documents whose placement in that category ADP determined to have been unwarranted. The Court ordered ADP to perform this reclassification within ten days from the date of oral argument. In view of the impending holiday this is amended to February 18, 1992. The Court imposed this deadline for the reclassification of the documents because it concluded that ADP had, as a litigation tactic and not due to inadvertence, overstamped documents "Highly Confidential." Any extra costs incurred by ADP as a result of this deadline, such as assigning additional ADP personnel to review and reclassify the documents over weekends and holidays, are in the nature of sanctions imposed by the Court due to the actions of ADP and its counsel in the original classification of the documents.

With respect to Quotron's proposed protective order, at oral argument, counsel for Quotron, Mr. Rauchberg, indicated that Quotron would agree to withdraw its request that three Quotron employees be permitted to examine the documents produced by ADP, in light of concerns expressed by the Court during the argument that the parties may well be using this litigation to engage in commercial espionage. The Court notes that, although the interim agreement signed by Quotron and ADP was clearly intended as a temporary measure, Quotron has so far been able to operate under its strictures, and the constraints Quotron has experienced appear to have resulted from the over-designation of documents as "Highly Confidential" and Quotron's utilization of only one expert. Utilization of only one expert may be penny-wise in the light of the limited damages available in a copyright action, but Plaintiff having invoked the Court's process must be prepared to make expenditures necessary to proceed to a prompt trial of this action.

■ In view of countervailing concerns of potential commercial espionage and the attendant possibility of engendering a counterclaim by AdP, this Court is hesitant to permit Quotron employees access to material that may well contain proprietary ADP programming. Furthermore, Quotron has not demonstrated a need for Quotron employees' access to the documents sufficient to outweigh these concerns. Quotron should hire as experts to assist them in examining the documents additional consultants, including former employees of Quotron, who are familiar with Quotron's software. Protective orders that limit access to certain documents to counsel and experts only are commonly entered in litigation involving trade secrets and other confidential research, development, or commercial information. *See, e.g., United States v. Davis*, 131 F.R.D. 391, 400 (S.D.N.Y.1990); *Culligan v. Yamaha Motor Corp.*, 110 F.R.D. 122, 125–26 (S.D.N.Y. 1986); *Stillman v. Vassileff*, 100 F.R.D. 467, 468 (S.D.N.Y.1984).

Accordingly, Quotron's motion for entry of its proposed protective order is denied, pending ADP's reclassification of the documents previously stamped "Highly Confidential," due to be completed on February 18, 1992. After production of these documents, Quotron may renew its request for entry of a protective order should it still find such a motion necessary. In the expectation that ADP's reclassification of the documents may facilitate agreement between the parties on a mutually satisfactory protective order, without the need for this Court's intervention, the Court also denies ADP's request for entry of ADP's proposed protective order at this time.

### 2. ADP's Motion to Quash Subpoenas

Quotron has served subpoenas duces tecum on non-parties Bear Stearns and Oppenheimer, who join in ADP's letters seeking to quash the subpoenas. ADP asserts that Bear Stearns and Oppenheimer, who

are not parties to this action, should not be required to respond to "extremely broad subpoenas calling for *all* ADP-related programming in their possession when such information is irrelevant to this action and, in any event, available directly from ADP." ADP Jan. 15, 1992 Letter at 2 (original emphasis). ADP also implies that the documents here sought "involve trade secrets between competitors." *Id.* at 10.

■ In referring to "trade secrets between competitors," ADP does not suggest that the documents sought might expose trade secrets of Bear Stearns and Oppenheimer. ADP Jan. 15, 1992 Letter at 10. Neither Oppenheimer nor Bear Stearns is a competitor of Quotron. *See Culligan,* 110 F.R.D. at 125 (need for discovery found to outweigh injury where parties were not competitors). As to potential exposure of confidential ADP material, a party asserting that "discovery will cause competitive injury because of the revelation of trade secrets ... cannot generally rely upon conclusory statements, but must present evidence of specific damage likely to result from disclosure." *Id.; Stillman,* 100 F.R.D. at 467. ADP has not made such a showing. Any confidentiality concerns raised by these subpoenas can be dealt with by means of a protective order, as with all other documents produced in this action. *See Culligan,* 110 F.R.D. at 125.

■ At oral argument, ADP contended that the subpoenas should be partially quashed because ADP had offered to produce directly to Quotron the ADP computer programming sought. Counsel for ADP alluded to oral conversations with counsel for Quotron, as well as to ADP's letters submitted to the Court in connection with this motion and to a letter faxed to counsel for Quotron at Proskauer on February 4, 1992. ADP's letter to the Court of January 15, 1992 faulted Quotron for its failure to seek production of the documents directly from ADP; it did not make an explicit offer of such production to Quotron. ADP Jan. 15, 1992 Letter at 8, 12. In its February 4 letter to Quotron, ADP merely offered to "endeavor to ascertain whether ADP can and will voluntarily produce cop-

ies of [the programming sought by Quotron] to [Quotron] directly." This offer is not a lawyer's straightforward, clear, and explicit offer to produce the material in question to Quotron.

■ Although Quotron must meet the initial burden of showing that the documents it seeks are relevant and necessary to this action, *Culligan,* 110 F.R.D. at 125, relevancy in this context is to be construed liberally and is not limited to the precise issues presented by the pleadings. *In re Surety of Ass'n of Am.,* 388 F.2d 412, 414 (2d Cir.1967) (quoting *Kaiser–Frazer Corp. v. Otis & Co.,* 11 F.R.D. 50, 53 (S.D.N.Y. 1951)). While Quotron's amended complaint makes specific allegations with respect to Smith Barney, it also alleges in several places that ADP attempted to induce additional customers to terminate their contractual relationships with Quotron through ADP's misappropriation of Quotron trade secrets. *See* Amended Complaint ¶¶ 3, 23, 35. Quotron contends that the materials so far produced by ADP in this action show that ADP's alleged infringements and use of trade secrets involved customers other than Smith Barney and Quotron products other than the Software Development Library, including "products that could not have been obtained at Smith Barney." Quotron Jan. 23, 1992 Letter at 2. Bear Stearns and Oppenheimer were formerly Quotron customers and became customers of ADP in 1990 and 1989, respectively. *Id.* at 3. Quotron contends that ADP's allegedly wrongful activities began "well before mid–1990." *Id.* at 2. Furthermore, ADP's claim that Oppenheimer and Bear Stearns were not Q1000 customers is disputed by Quotron. *Id.* at 12. Accordingly, the information sought in the subpoenas is not irrelevant and they will not be quashed.

■ Because the Court is concerned that litigation tactics not be adopted with a view to improve a client's competitive position, it orders ADP to provide the computer programming requested by February 24, 1992 and relieves Bear Stearns and Oppenheimer of the burden of complying with this aspect of the subpoenas. With this modifi-

cation, ADP's motion to quash the subpoenas is denied.

### CONCLUSION

For the foregoing reasons, Quotron's motion for entry of its proposed protective order is denied, and ADP's motions to quash the subpoenas of Bear Stearns and Oppenheimer and for entry of its proposed protective order are also denied.

IT IS SO ORDERED.

