**COMPAQ COMPUTER CORP., Plaintiff,**

v.

**PACKARD BELL ELECTRONICS, INC., Defendant.**

**No. C 95–7005 Misc JW.**

United States District Court, N.D. California.

July 24, 1995.

---

John Cooney, Venable, Baetjer, Howard & Civiletti, L.L.P., Washington, DC, for Plaintiff Compaq.

Thomas J. McDermott, Timothy M. Thornton, Mannatt, Phelps & Phillips, Los Angeles, CA, for Defendant Packard Bell.

Terrence P. McMahon, Carl W. Chamberlin, Erin M. Farrell, Orrick, Herrington & Sutcliffe, Menlo Park, CA, for Non–Party Acer America Corp.

## MEMORANDUM & ORDER GRANTING IN PART AND DENYING IN PART NON–PARTY ACER'S MOTION TO QUASH SUBPOENAS AND/OR FOR PROTECTIVE ORDER

INFANTE, United States Magistrate Judge [*].

### I. *Introduction and Background*

This is a miscellaneous discovery proceeding. In the underlying action venued in the United States District Court for the District of Delaware, No. 95–222, plaintiff Compaq Computer Corp. ("Compaq") alleges that defendant Packard Bell Electronics, Inc. ("Packard Bell") has engaged in false advertising in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), unfair and deceptive trade practices in violation of the Delaware Uniform Deceptive Trade Practices Act, 6 Del.Code § 2531 et seq., and unfair competition under Delaware common law.[1] Both Packard Bell and Compaq manufacture personal computers and they reportedly hold the top two positions, respectively, in the domestic personal computer market, together controlling nearly a quarter of the market.[2] The thrust of Compaq's allegations are that Packard Bell recycles parts from personal computers returned by customers and engages in the misleading practice of mislabeling and advertising for sale as "new" computers which contain recycled parts. Packard does not deny recycling parts from pre-sold computers, but intends to establish at trial that personal computers containing returned components which have been properly tested, recertified and fully warranted are the equivalent of unused PCs, that the practice of recycling parts is prevalent in the industry and, hence, that consumers are not materially misled.

On or about May 12, 1995, Packard Bell served a pair of subpoenas on non-party Acer America Corporation ("Acer"), a San Jose-based corporation which is a much smaller direct competitor of both Packard Bell and Compaq.[3] One of the subpoenas seeks production on June 5, 1995 of 15 categories of documents, the other testimony on June 6, 1995 from Acer's most knowledgeable corporate deponent(s) on a half dozen topics.[4] In general, the document requests seek documents for the preceding four years concerning the level of customer returns of Acer products, Acer procedures for handling returns and its re-use of component parts of returned products. The deposition subpoena seeks Acer's most knowledgeable personnel on the same general subject matter. Acer served objections to the subpoenas on June 2, 1995,[5] and has presently moved to quash the subpoenas and/or for a protective order. The parties have stipulated that the subpoenas need not be satisfied pending the Court's

---

[*] The instant motion has been automatically referred to a magistrate judge pursuant to the United States District Court for the Northern District of California Consolidated Standing Order re Assignment of Matters to United States Magistrate Judges in San Jose, filed August 3, 1994, which pertinently provides: "discovery disputes arising under . . . Rule 45 of the Federal Rules of Civil Procedure shall be heard and determined by the assigned Magistrate Judge in accordance with Rule 72(a) of the Federal Rules of Civil Procedure and 28 U.S.C., section 636(b)(1)(A)".

1. A copy of the complaint in the underlying action is attached as Exhibit D to the Declaration of Acer's counsel, Carl Chamberlin ("Chamberlin Decl.").

2. *See* Declaration of Packard Bell's attorney, Timothy Thornton ("Thornton Decl."), ¶ 2 and Exhibit A (copy of *Wall Street Journal* article, dated May 1, 1995 at p. B6, listing the top five vendors). According to the *Wall Street Journal,* Packard Bell controls 12.7 percent of the market, while Compaq controls 11.4 percent.

3. Acer competes directly with both Packard Bell and Compaq in the retail sale of personal computers. Declaration of Acer's director of business development, Todd Kleppe ("Kleppe Decl."), ¶ 4. Acer's market share is uncertain but it is not among the top five vendors, which also include Apple Computers, IBM and Gateway 2000. *See* Thornton Decl., ¶ 2 and Exhibit A (copy of *Wall Street Journal* article). Gateway 2000, the fifth leading manufacturer, controls only 5.4 percent of the market. Acer's share is thus smaller still.

4. Copies of the respective subpoenas are attached as Exhibits A and B to the Chamberlin Decl.

5. A copy of the objections is attached as Exhibit C to the Chamberlin Decl.

ruling on Acer's motion.[6]

Acer asserts that the subpoenas seek its trade secrets and other confidential and proprietary information, including identification of its customers and cost structures. Acer notes that it undertakes extensive efforts to maintain the secrecy of the sorts of information sought by Packard Bell.[7] Acer also argues that the information sought by Packard Bell is irrelevant to the issues in the underlying lawsuit and can be obtained through other sources in any event. Finally, Acer contends that production of the requested information would be unduly burdensome. Acer's vice president of manufacturing operations attests that "a search and retrieval of documents that might 'concern' Acer's handling and disposition of returned products would take over 1,000 person-hours, involve a manual search through voluminous records, and divert Acer employees from important job responsibilities".[8]

Packard Bell responds that its subpoenas are integral to its efforts to obtain discovery establishing that its practices are in line with industry standards:

"All manufacturers of computers ... receive a significant number of returns, the great majority of which are for customer convenience (i.e., result from buyers' remorse and contain no defects). No manufacturer throws these computers into a landfill. All computers or their components are recycled." [9]

Packard Bell has offered to limit the scope of its subpoenas, although it has not proposed specific limits. Further, Packard Bell is willing to limit the subject matter of its subpoenas to "the procedures and policies of Acer with respect to returned computers and computer components, along with information related to the percentage of personal computers returned".[10] In short, Packard Bell wants to know, "What does Acer do with returned PCs?" [11]

*"To the extent that the subpoenas request additional information, Packard Bell agrees not to seek that information.* Moreover, to the extent that complying with this limited request would prove onerous, Packard Bell is willing to work with Acer to limit the requested information even further." [12]

Finally, Packard Bell is willing to stipulate to a protective order that the information obtained through its subpoenas be used only for defense of the underlying action and is also willing to stipulate that Acer's disclosures would be subject to the protective order already in place in the underlying action. Pertinently, the existing protective order restricts employees and agents of the litigants—i.e., Compaq and Packard Bell—and their in-house counsel from having access to documents marked "special confidential".[13]

Compaq has not taken a position on Acer's motion and did not appear at the hearing thereon.[14]

Substantially-identical subpoenas have been served by Packard Bell on ten other personal computer manufacturers, including Tandy Corporation; Texas Instruments, Inc.; International Business Machines, Inc.; Zeos International, Ltd.; AST Research, Inc.;

6. Chamberlin Decl. re Ex Parte Application for Hearing on Shortened Time, ¶ 3. Counsel for Acer and Packard Bell met and conferred regarding the subpoenas pursuant to Local Rule 230–4, but were unable to resolve the matter. *See* Chamberlin Decl., ¶ 7; Declaration of Packard Bell's attorney, Timothy Thornton ("Thornton Decl."), ¶ 6 and Exhibit E (copy of meet-and-confer letter from Thornton to Chamberlin, dated June 7, 1995); Suppl. Chamberlin Decl., ¶ 7 and Exhibit D (copy of meet-and-confer letter from Chamberlin to Thornton, dated June 13, 1995).

7. *See* Kleppe Decl., ¶ 9 (listing steps taken by Acer to limit access to the documents).

8. Declaration of Robert Marks ("Marks Decl."), ¶ 4.

9. Packard Bell's Brief, at p. 1.

10. *Id.*, at p. 5.

11. *Id.*

12. *Id.* (emphasis added).

13. A copy of the existing protective order in the underlying action is attached as Exhibit F to the Thornton Decl.

14. Packard Bell's attorney represented at the hearing that he had been authorized to inform the Court of Compaq's neutrality.

Gateway 2000; Apple Computer; Dell Computer Corporation; and Leading Edge Products, Inc. Acer asserts that several of the subpoenaed manufacturers have objected to the subpoenas, but to date apparently only one, Leading Edge Products, Inc., has brought a motion to quash, and that motion is venued in the United States District Court for the District of Massachusetts. Acer's motion will be the first to be resolved.[15]

## II. Discussion

"On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it ... requires disclosure of privileged or other protected matter and no exception or waiver applies, or subjects a person to undue burden." Fed.R.Civ.P. 45(c)(3)(A)(iii) and (iv). Additionally, "[u]pon motion by a party or by the person from whom discovery is sought ... and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... that the disclosure or discovery not be had ... [and/or] that a trade secret or other confidential research, development, or commercial information not be revealed or revealed only in a designated way." Fed.R.Civ.P. 26(c)(1) and (7).

### A. Relevance of Discovery Sought

■ "A district court whose only connection with a case is supervision of discovery ancillary to an action in another district should be 'especially hesitant to pass judgment on what constitutes relevant evidence thereunder'. Where relevance is in doubt ... the court should be permissive." *Truswal Systems Corp. v. Hydro–Air Engineer-*

*ing, Inc.*, 813 F.2d 1207, 1211–12 (Fed.Cir. 1987) (citation omitted).

Packard Bell contends that the information sought through its pair of subpoenas served upon Acer is relevant to define the term "new" and to define the term "materiality".

### 1. *Acer's standing to assert irrelevance*

■ Packard Bell also argues (in a footnote) that Acer, as a non-party, lacks standing to assert non-relevance in seeking to quash a subpoena.[16] The argument is misguided, as one district judge has observed:

"It is clear that ... relevance of the subpoenaed information has an important bearing upon the determination of claim that a subpoena duces tecum is unreasonable or oppressive, as well as to a claim of confidentiality for the material sought to be produced, and that a sufficient showing of need for the information will suffice to overcome such objections—albeit compliance with the subpoena may be subjected to protective orders or conditioned upon payment of expenses by the party seeking disclosure."

*New York State Energy Research v. Nuclear Fuel Service*, 97 F.R.D. 709, 712 (W.D.N.Y. 1983) (Elfvin, J.); see also, *Shields Enterprises, Inc. v. First Chicago Corp.*, 1988 WL 142200 (N.D.Ill., December 28, 1988); *Fein v. Numex Corp.*, 92 F.R.D. 94, 96 (S.D.N.Y. 1981) ("it is difficult to imagine a considered evaluation of burdensomeness in the abstract, without balancing the degree of burdensomeness against the extent to which the discovery sought is relevant to the issue in the litigation"). This Court finds Judge Elfvin's reasoning more persuasive than that of the authorities cited by Packard Bell. Obviously, if the sought-after documents are not relevant nor calculated to lead to the discovery of admissible evidence, then *any burden whatsoever* imposed upon Acer would be by

---

**15.** *See* Suppl. Chamberlin Decl., ¶ 5 ("I believe, based on ... conversations with counsel for other computer manufacturers, that Acer's motion will be the first one to be decided.").

**16.** Packard Bell's Brief, at p. 6 n. 1, citing *Ghandi v. Police Dept. of City of Detroit*, 74 F.R.D. 115 (E.D.Mich.1977) (expressing "serious reservations about the propriety of a non-party deponent moving to quash a subpoena duces tecum on the

ground that the information sought is not relevant to the pending action ... [because the deponent] has no interest in the outcome"), and, *Cooney v. Sun Shipbuilding and Drydock Co.*, 288 F.Supp. 708 (E.D.Pa.1968) ("having no interest in the outcome of the case, arguments as to 'relevancy' and 'materiality' are not appropriate concerns of [non-party] witnesses").

definition "undue". Thus, Acer has standing to assert that the subpoenaed information is irrelevant.

## 2. *definition of 'new'*

■ To prevail on a claim of false advertising under the Lanham Act, a plaintiff must demonstrate that the defendant's advertisements are *either* literally false *or* are misleading to the consuming public. *Sandoz Pharmaceuticals v. Richardson–Vicks, Inc.,* 902 F.2d 222, 228–29 (3rd Cir.1990).[17] While the determination whether an advertising claim is misleading to consumers is evaluated from the public's perspective, "[i]n order to determine whether a claim is literally false courts have looked to objective industry standards ..." *Castrol, Inc. v. Pennzoil, Co.,* 799 F.Supp. 424, 436 (D.N.J.1992), *aff'd,* 987 F.2d 939 (3rd Cir.1993). Literal falsity is thus evaluated "without reference to consumer confusion". *Id.,* 987 F.2d at 947.

■ Acer argues that where the defendant is not alleged to have made an affirmative misrepresentation, but merely an omission of material information, the issue of truth or falsity is dispensed with and the only question is whether the fact of the omission misleads the public. This argument is misguided. First, Compaq alleges in its complaint an affirmative misrepresentation on Packard Bell's part: "Packard Bell misrepresents its computers as new ..." [18] Second, Compaq alleges that Packard Bell's misrepresentations are *both* literally false *and* misleading to consumers.[19] Although the evidence may establish that Packard Bell made no pertinent affirmative representations, false or otherwise, Compaq's allegations—which chiefly define what is relevant—do not concede this proposition. Hence, Packard Bell's potential liability under the Lanham Act for allegedly falsely advertising its personal computers to consumers as being "new" may turn on the

meaning of the term within the industry. In this context, information concerning whether Packard Bell's competitors, or several of them, recycle used components and pass them off, re-assembled, as "new" is obviously relevant.

## 3. *definition of 'materiality'*

■ "[W]here advertisements are not literally false, [the] plaintiff bears the burden of proving actual deception by a preponderance of the evidence. Hence, [the plaintiff] cannot obtain relief by arguing how consumers *could* react; it must show how consumers *actually do* react." *Sandoz Pharmaceuticals, supra,* 902 F.2d at 228–29 (emphasis in original; citations omitted). This Third Circuit language in effect establishes a materiality requirement, i.e., merely misleading advertising is not actionable under the Lanham Act unless it actually affects consumer activity.

■ Packard Bell argues that the issue whether other personal computer manufacturers sell products containing recycled parts is relevant to the question whether consumers would be disinclined to purchase PC's which they know are made from recycled parts. Indeed, Packard Bell seemingly would be a strong position if it could show *both* that recycling is standard in the industry and that there is no meaningful performance differential between recycled and non-recycled products. Consumers possessed of such knowledge doubtless would not consider significant to their purchase decisions whether a given brand of personal computer uses recycled parts. Packard Bell's subpoenas are therefore at least calculated to lead to the discovery of relevant information concerning whether the use of recycled parts is,

---

**17.** Third Circuit law is controlling in the underlying action, which is venued in a district court within that circuit. Thus, Third Circuit authorities are most pointed as to what is relevant on Compaq's federal Lanham Act claim.

**18.** Chamberlin Decl., Exhibit D (complaint, at ¶ 1).

**19.** *Id.* (complaint, at p. 6). The complaint is sloppy with its use of conjunctions. Count I of the complaint for violation of the Lanham Act is labelled "False *and* Misleading Advertising", but paragraph 20 thereof alleges "false *or* misleading representations". (Emphasis added). The disparity is not material. Literal falsity is obviously an issue in the lawsuit.

or at least should be, material to consumer decision-making.[20]

### 4. *relevance of individual requests*

#### i. *document requests*

■ Document Request No. 1 seeks documents concerning Acer's gross number of personal computer returns. The Court finds that the subject matter is relevant but that a summary or compilation document will adequately satisfy Packard Bell's interests without subjecting Acer to the burden of producing voluminous documents. *See* Fed.R.Evid. 1006.

■ Request No. 2 seeks documents concerning Acer's level of product returns and allowances as a percentage of gross sales. The Court finds that this request does not seek relevant information nor information likely to lead to the discovery of relevant information. Acer's objections thereto are sustained.

■ Requests Nos. 3 through 7 seek documents concerning Acer's "practices, policies and procedures" regarding returned products and their subsequent re-use. The Court finds that these documents are all. relevant.

■ Request No. 8 seeks documents concerning the subsequent sale of products with recycled parts "*and* any disclosures regarding the use of returned parts in such products". The Court finds that only documents which refer, relate to or evidence "disclosures" regarding the use of returned parts are relevant.[21] The request is so limited.

■ Requests Nos. 9 and 12 seek documents *concerning discount levels and customer incentives*. The Court finds that such documents are not relevant nor calculated to lead to the discovery of relevant evidence. The Court sustains Acer's objections to these requests.

■ Requests Nos. 10 and 11 seek documents concerning product disassembly and the re-use of disassembled parts. The Court finds that such documents are relevant.

■ Request No. 13 seeks documents concerning industry standards regarding the re-use of personal computer component parts. The Court determines that such documents are relevant.[22]

■ Finally, Requests Nos. 14 and 15 seek documents in Acer's possession containing information about practices of Compaq and Packard Bell, respectively, regarding the re-use of component parts from disassembled products. The Court determines that such documents are relevant.

#### ii. *deposition subjects*

The Court finds that all of the deposition topics are relevant to the underlying litigation.

### B. *Acer's confidentiality interest*

#### 1. *privilege claims*

"When information subject to a subpoena is withheld on a claim that it is privileged or

---

**20.** Packard Bell also contends that the issue whether several of its competitors are using recycled parts is relevant to the appropriate remedy because the imposition of damages or injunctive relief would supposedly put Packard Bell at a competitive disadvantage vis-a-vis competitors doing the same thing. This argument, to the effect that "everybody's doing it, so it's unfair to punish me", has no resonance. As Packard Bell admits, the final decision in Compaq's suit against it "will define, or at least, greatly influence industry practice in this area". Packard Bell's Brief, at p. 8.

Presumably, then, a finding of liability against Packard Bell should dissuade other miscreants from continuing to sell PCs using recycled parts as "new". Packard Bell would therefore not be at any competitive disadvantage.

**21.** Acer admits that "the extent to which other computer manufacturers *disclosed* their practices to the public would conceivably be relevant to the consumer's knowledge and the materiality of Packard Bell's nondisclosure". Acer's Reply Brief, at p. 9 (emphasis in original). Acer is, of course, one of these other computer manufacturers, and information about its disclosures is therefore, by Acer's own admission, relevant.

**22.** Acer objects that the broad definition of the phrase "all documents concerning" within the subpoena duces tecum renders this an umbrella request which subsumes all the others. Acer's concerns are adequately addressed, though, if this request is given a plain meaning and is construed to encompass documents about the practices, not of Acer, but of Acer's competitors and of the industry generally.

subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim." Fed.R.Civ.P. 45(d)(2). "A party receiving a discovery request who asserts a privilege or protection but fails to disclose that claim is at risk of waiving the privilege or protection." Notes of Advisory Committee on Rules to 1991 Amendment to Rule 45.

■ Acer's formal objections to the subpoenas contain general objections "to the extent they [the subpoenas] seek ... documents protected by the attorney-client privilege, work product doctrine, or other applicable privilege against disclosure".[23] These general objections do not satisfy the requirements of Rule 45(d)(2). Acer is ordered to serve a privilege log listing all documents withheld on the ground of privilege against disclosure and providing information as to each such document sufficient to sustain the burden of asserting the privilege(s). See, *Miller v. Pancucci*, 141 F.R.D. 292, 302 (C.D.Cal.1992) (listing ten items of information which together are sufficient to claim the attorney-client privilege).

### 2. *commercially-sensitive information*

■ Acer argues that whether or not the subpoenas seek relevant information they should be quashed because they seek Acer's trade secrets and other confidential commercial information. The Court is persuaded that Acer's procedures for recycling computer parts do constitute important proprietary information. Further, Acer has made a strong showing that it has historically sought to maintain the confidentiality of this information. Therefore, the Court presumes that all information sought pursuant to Packard Bell's subpoenas consists of trade secrets

and/or other commercially-sensitive information.

### 3. *'substantial need'/protective order*

"If a subpoena requires disclosure of trade secrets or other confidential research, development or commercial information ... or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions." Fed.R.Civ.P. 45(c)(3)(B)(i). "A survey of the relevant case law reveals that discovery is virtually always ordered once the movant has established that the secret information is [both] relevant and necessary." *Coca–Cola Bottling Co. v. Coca–Cola Co.*, 107 F.R.D. 288, 293 (D.Del.1985) (citing cases).

■ Acer argues that Packard Bell does not have a "substantial need" for its confidential documents because Packard Bell can establish industry practice through retaining an industry expert. This argument is flawed, however, because although Packard Bell will no doubt introduce expert testimony at trial as to the industry standard regarding sale of personal computers using recycled parts, such testimony must be based on something more than mere surmise. The expert will need to take a survey of competitor practices and, because the sort of information needed is maintained confidentially by Acer—and presumably the other subpoenaed manufacturers—the survey cannot be conducted informally but only through the formal subpoena power of the federal courts.[24] The Court finds, therefore, that Packard Bell has a substantial need for the

---

**23.** Chamberlin Decl., Exhibit C (copy of objections, at pp. 1–2 and passim [reiterating same objections in response to individual document requests]).

**24.** Acer argues that an industry standard "must by definition already be *known*" in the industry. Acer's Reply Brief, at p. 8 (emphasis in original). This proposition is dubious. An industry standard may merely amount to a prevalent practice,

with a variety of vendors independently, and secretively, adopting the practice because of its evident economic advantages. Obversely, although an industry practice may be known generally within the industry, its specific application by individual practitioners may be shrouded in mystery. In short, an industry standard need not necessarily be widely known in the industry, merely widely practiced.

information sought which cannot be derived in any other fashion, at least not without undue hardship to Packard Bell.[25]

 Packard Bell has offered to stipulate to an appropriate protective order which would protect Acer's confidential information from being used by its competitors. The Court determines that production of Acer's commercially-sensitive responsive documents would be appropriate if these documents are classified "special confidential" under the existing protective order in the underlying litigation. Packard Bell's and Compaq's employees and agents, including in-house counsel, would thus be prohibited from accessing these documents. Additionally, the Court concludes that attendance at the deposition(s) of Acer's corporate deponent(s) shall be restricted to outside counsel for the interested parties, and that the transcript(s) of such deposition(s) shall be sealed and classified "special confidential" within the meaning of the existing protective order in the underlying litigation.

Acer argues, however, that the existing protective order is inadequate because "[t]he penchant of Compaq to sue a competitor to gain an advantage in the marketplace ... shows that a protective order in this case would protect little indeed".[26] However, if Compaq is already inclined to sue Acer, it will likely not be deterred by an inability to access Acer's documents prior to bringing suit. Moreover, Acer's counsel assured the Court at the hearing on its motion that, although Acer is fearful of being sued by Compaq, Acer's *primary* concern is that its trade secrets will be used by Packard Bell and/or Compaq to eliminate any competitive advantage Acer enjoys in the marketplace by *maintaining the secrecy of such information.* Application of the "special confidential" clas-

sification of the protective order should mitigate this primary concern.

### C. *Burden of Production*

██ As noted, a court must quash or modify a subpoena which "subjects a person to undue burden". Fed.R.Civ.P. 45(c)(3)(A)(iv). Acer has established that the requests would involve substantial person-hours which might otherwise be devoted to profitable use.[27] Acer is entitled to be compensated at a reasonable hourly rate for its employees', including in-house paralegals', time in searching for, reviewing for privileged material and producing responsive documents, and in sitting for deposition.

> "Although party witnesses must generally bear the burden of discovery costs, the rationale for the general rule is inapplicable where the discovery demands are made on non-parties. Nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party."

*United States v. Columbia Broadcasting System, Inc.,* 666 F.2d 364, 371 (9th Cir.), *cert. denied,* 457 U.S. 1118, 102 S.Ct. 2929, 73 L.Ed.2d 1329 (1982).

### III. *Order*

Accordingly, IT IS HEREBY ORDERED that

(1) Acer's motion to quash the pair of subpoenas served upon it by Packard Bell or, alternatively, for a protective order is GRANTED IN PART AND DENIED IN PART; (2) Acer's objections to Document Requests Nos. 2, 9 and 12 are SUSTAINED; (3) Acer's objections to Document Requests Nos. 1 and 8 are SUSTAINED IN PART

---

**25.** Acer notes that, because it controls only a very small (but unspecified) share of the PC market, its information provides only one small piece of the puzzle. Acer therefore poses a paradox: if Packard Bell is unable to obtain additional information from several larger competitors, Acer's data alone will be insufficient to establish industry practice; on the other hand, if Packard Bell does obtain the additional information, Acer's data is surplusage. This apparent conundrum is a red herring. Acer's information will

be illustrative, albeit not dispositive, of industry practice regardless whether Packard Bell is able to obtain information from its other competitors. The whole picture may be greater than the sum of its parts, but there can be no picture at all unless the parts are collected one-by-one.

**26.** Acer's Reply Brief, at p. 14.

**27.** *See* Marks Decl., ¶ 4 (quoted hereinabove).

AND DENIED IN PART; Acer shall produce a compilation or summary document in response to Request No. 1 and Acer shall provide documents in response to Request No. 8 which refer, relate to or evidence "disclosures" to customers concerning the use of recycled component parts; (4) Acer's objections to Document Requests Nos. 3–7, 10–11 and 13–15, and to each of the corporate deposition topics, are OVERRULED; (5) Responsive documents produced by Acer shall be classified as "special confidential" within the meaning of the existing protective order, filed June 5, 1995, in the underlying litigation in the United States District Court for the District of Delaware, No. 95–222; such documents shall not be disclosed or made accessible to Packard Bell's or Compaq's employees or agents, including in-house counsel, unless otherwise ordered by the United States District Court for the District of Delaware; the documents shall be used solely for purpose of the underlying litigation and shall be returned to Acer or destroyed upon completion of said litigation;[28] (6) The deposition(s) of Acer's corporate deponent(s) shall be restricted in attendance to the deponent(s), the court reporter, and outside counsel for the interested parties, and the transcript(s) thereof shall be sealed and classified "special confidential" within the meaning of the existing protective order, filed June 5, 1995, in the underlying litigation in the United States District Court for the District of Delaware, No. 95–222; such transcript(s) shall not be disclosed or made accessible to Packard Bell's or Compaq's employees or agents, including in-house counsel, unless otherwise ordered by the United States District Court for the District of Delaware; the transcript(s) shall be used solely for purpose of the underlying litigation and shall be destroyed upon completion of said litigation; (7) Acer shall be compensated at a reasonable hourly rate for the time spent by its employees, including in-house paralegals, in searching for, reviewing for privileged material and producing responsive documents,

and in sitting for deposition; the parties shall meet and confer following production concerning the amount of reasonable compensation; (8) Acer shall produce all responsive, non-privileged documents, along with a log of all documents withheld on the basis of an asserted privilege, on or before August 24, 1995; the corporate deposition of Acer through its most knowledgeable personnel shall take place *after* the document production has been accomplished and on a mutually agreeable date at the noticed location on or before September 15, 1995.

SO ORDERED.

---

**28.** Compaq's failure to appear at the hearing on this motion, or to take a position thereon, does not relieve it from the obligation of complying with the Court's protective order. The Court is informed by counsel for Packard Bell, Mr. Thornton, that Compaq had notice of the motion and hearing date and that he had been authorized to indicate that Compaq was taking no position on the motion. Therefore, Compaq cannot reasonably complain that it should not be bound by applicable provisions of this Order.