**MYCOGEN PLANT SCIENCE, INC., et al.,**

v.

**MONSANTO CO.**

No. 95–misc–283.

United States District Court, E.D. Pennsylvania.

Feb. 16, 1996.

Patrick W. Kittredge, Kittredge, Donley, Elson, Fullem & Embick, Philadelphia, PA, for plaintiff.

Claire Rocco, Connolly, Epstein, Chicco, Foxman, Engelmyer & Ewing, Philadelphia, PA, for non-parties Ecogen, Inc., Dr. Leigh English and Dr. Bruce Carlton.

***MEMORANDUM***

DALZELL, District Judge.

I. *Introduction*

This Memorandum addresses the Renewed Motion of Ecogen Inc., Dr. Leigh English, and Dr. Bruce Carlton to Quash Subpoenas and for a Protective Order.[1] Mycogen Plant Science, Inc., and Agrigenetics, Inc. (collectively "Mycogen"), are pursuing a patent infringement claim against Monsanto Co. in federal court in California, and it believes

---

1. We will sometimes refer to Ecogen and Drs. English and Carlton collectively as "Ecogen". The motion is "renewed" because Mycogen first issued procedurally defective subpoenas in October, 1995. The company then withdrew the subpoenas after we issued an Order to Show Cause. *See* Order, *Mycogen Plant Science, Inc. v. Monsanto Co.*, Misc. no. 95–283 (E.D.Pa. Nov. 1, 1995). It has now re-served the subpoenas, apparently correctly, since Ecogen raises no procedural arguments in its renewed motion.

that Ecogen has information relevant to that claim.

After our review of the extensive briefing, Mycogen has persuaded us that Ecogen should produce some, but by no means all, of the information that Mycogen seeks. We will therefore enforce the subpoenas in part and deny Ecogen's motion to quash to that extent. Mycogen may conduct the limited discovery that we allow this day, and may thereafter apply to us for additional discovery.

## II. *Facts and Relevant Procedural History*

On January 10, 1995, Mycogen received a patent for a "chemically synthesized gene encoding an insecticidal protein which is functionally equivalent to a native insecticidal protein of Bt". Guise decl. ex. A. (Patent No. 5,380,831 ("Summary of the Invention")) (the " '831 patent"). In plainer language, the gene deals with the problem, well-known to farmers, that bugs eat crops. "Bt", or *Bacillis thuringiensis,* is a bacterium that bugs find toxic. Mycogen resp. at 1–2. Hence, a great deal of effort has gone into engrafting the Bt gene into seeds, with the result that bugs find plants grown from those seeds toxic and no longer eat them. *Id.* at 2(a). Mycogen advanced Bt technology beyond even its natural limits when it developed and patented its synthetic Bt gene. The '831 gene was "designed to be expressed in plants at a level higher than naturally-occurring Bt genes". Guise decl. ex. A. (Patent No. 5,380,831 ("Abstract")). Thus, Mycogen's gene enhances the toxicity (to bugs) of the crops that contain it, with a corresponding improvement in crop health and yield. Mycogen resp. at 2–2(a).

Mycogen believes that Monsanto stole the '831 patent when the two companies were discussing a buyout of Mycogen. 10/24/95 Hrg.Tr. at 47; 1/12/96 Hrg.Tr. at 55.[2] Although it is not clear when these negotiations occurred, it appears that Mycogen's lawyers revealed the patent application to Monsanto's lawyer at that time. 1/12/96 Hrg.Tr. at 55. At the time, Mycogen had filed the application for the '831 plant, but the patent had not yet issued. Of course, there is no direct proof that Monsanto stole the formula for the synthetic gene, but Mycogen has inferred the theft from various events. For example, Mycogen believes that Monsanto filed its own application for an identical or similar patent four to six months after the disclosure. *Id.*

Ecogen has also developed Bt gene technology. According to the company's vice-president and general counsel, Ecogen has spent ten years and $100,000,000 to create more than 10,000 strains of the Bt gene. Ecogen mot. ex. J. (Deak aff. ¶¶ 10–11). The value of this "gene library" is apparent from a recent deal between Monsanto and Ecogen, in which Monsanto agreed to pay Ecogen $25,000,000 for the right to develop the genes for "in-plant technology". *Id.* (Deak aff. ¶ 11); *see also id.* C (press release).

On August 27, 1995, Mycogen sued Monsanto, alleging, *inter alia,* that Monsanto both infringed Mycogen's patent and induced others to infringe that patent. *Id.* ex. F (complaint ¶ 7); *see also* 35 U.S.C. 271(g). Its patent claims address both the *process* by which Mycogen derives the synthetic Bt gene and the *product, i.e.,* the synthetic gene itself. Ecogen mot. ex. F (complaint ¶ 7); *see also* Order, *Mycogen Plant Science, Inc. v. Monsanto Co.,* No. 95–653–J, at 2 (S.D.Cal. Sept. 22, 1995) (order granting defendant's summary judgment motion in part).[3] Myco-

---

**2.** In its response, Mycogen bases its subpoena on "the substantial evidence that Monsanto infringed the '831 patent and was inducing others, such as Ecogen, Inc., to infringe the '831 patent". Mycogen resp. at 2. Because Mycogen nowhere describes that "substantial evidence", we have relied for facts on the transcripts of three discovery conferences from the United States District Court for the Southern District of California. As

we explain below, in our view the evidence of Ecogen's involvement in Monsanto's alleged misfeasance is not nearly as "substantial" as Mycogen would have us believe.

**3.** The complaint also contains state-law claims for unfair competition, trade libel and disparagement, intentional interference with prospective

gen has sought discovery from Monsanto to prove the inference of theft.[4]

Mycogen draws a second inference from the deal between Ecogen and Monsanto. It believes that Monsanto gave Ecogen the data that it stole from Mycogen. 1/12/96 Hrg.Tr. at 38, 77, 161–65. To prove this second inference (and perhaps the first as well), Mycogen has served Ecogen and two of its employees with subpoenas. These subpoenas seek documents from Ecogen as well as the depositions of two employees, Drs. Leigh English and Bruce Carlton. Ecogen mot. ex. A (copies of the subpoenas).

The document requests are broad. Essentially, Mycogen seeks all communications dated after January 1, 1986 between Monsanto and Ecogen regarding Bt genes. We assume that the depositions of Drs. English and Carlton would be equally broad. In its response to Ecogen's motion to quash, however, Mycogen has offered to limit its requests to "post-issuance" discovery, *i.e.*, after January 10, 1995. Mycogen resp. at 3–4.

Decrying what it perceives as a threat to its trade secrets by a direct competitor, Ecogen has moved to quash the subpoenas. The company objects to the burden and expense that the subpoena imposes on it, a non-party to the war between Monsanto and Mycogen. Ecogen also argues that Mycogen can obtain the documents they seek directly from Monsanto. Finally, the company emphasizes the irreparable damage that disclosure of its gene library would cause to its competitive standing. Ecogen mot. at 6; *see id.* ex. D (copies of the objections).

On September 22, 1995, Judge Napoleon A. Jones, Jr., the Judge assigned to the California action, granted partial summary judgment on Mycogen's patent infringement claims. Order, *Mycogen Plant Science, Inc. v. Monsanto Co.*, No. 95–653–J (S.D.Cal. Sept. 22, 1995). Judge Jones granted partial summary judgment in favor of Monsanto on Mycogen's process claims, holding that "Monsanto cannot have infringed Mycogen's process patents based on any process it performed before the patent issued". *Id.* at 7. Judge Jones denied summary judgment as to the product claims, holding that he could not adjudicate this claim in the absence of discovery and expert opinion. *Id.* at 7–9.

The unpleasant task of determining the scope of discovery in the California action has fallen to the Honorable Leo S. Papas, United States Magistrate Judge. Judge Papas has held three discovery conferences, and all of them have greatly aided us in our task. At the most recent conference, Judge Papas described the scope of permitted discovery between Mycogen and Monsanto. Judge Papas has allowed post-issuance discovery, *i.e.*, all discovery regarding events after January 10, 1995, to proceed. *See* 1/12/96 Hrg.Tr. at 166 ("Anything post-issuance is on the table, as far as I know.").[5] It also appears, however, that Judge Papas has decided that pre-issuance discovery should await resolution of other legal issues. *Id.* at 158 ("And with respect to the last item, the process claims, I am not yet comfortable in whether or not I can or should make a decision with regard to discovery of pre-issuance sequencing or the generation or design of genes or sequencing of genes."). Monsanto has filed or is going to file another summary judgment motion, and resolution of this motion should greatly clarify the discovery issues pending on both coasts. *See id.* at 159–60.[6]

### III. *Legal Analysis*

■ The serve-and-volley of the federal discovery rules govern the resolution of Ecogen's motion to quash. First, Mycogen must show that its requests are relevant to its

---

business advantage and unjust enrichment. *See* Mycogen mot. ex. F.

4. We have an exchange of letters between counsel in the California action outlining their positions on Mycogen's entitlement to discovery. Discovery appears to be proceeding slowly in that action, in accordance with instructions from the Court. The precise scope of discovery remains cloudy.

5. In correspondence delivered to us, Monsanto appears not to challenge this conclusion.

6. Judge Papas also entered a protective order limiting the number of people who view any produced documents. 1/12/96 Hrg.Tr. at 149–57.

claims against Monsanto, within the meaning of Federal Rule of Civil Procedure 26(b)(1). *In re Indep. Serv. Orgs. Antitrust Litigation,* 162 F.R.D. 355, 356 (D.Kan.1995) [hereinafter *Antitrust* ]; *Quotron Sys., Inc. v. Automatic Data Processing,* 141 F.R.D. 37, 41 (S.D.N.Y.1992). Ecogen then must show that the information Mycogen seeks is subject to a privilege or some other form of protection. Here, Ecogen relies on trade-secret protection. *See Smith v. BIC Corp.,* 869 F.2d 194, 199–200 (3d Cir.1989); *GE Capital Mortgage Serv., Inc. v. Pinnacle Mortgage Investment Corp.,* 897 F.Supp. 854, 870–72 (E.D.Pa.1995). The burden then falls upon Mycogen to show a "substantial need for the testimony or material that cannot be otherwise met without undue hardship". Fed.R.Civ.P. 45(c)(3)(B)(iii).

■ Although both Rule 26 and Rule 45 protect trade secrets, that protection is not absolute. *Antitrust,* 162 F.R.D. at 356. We must therefore balance Mycogen's legitimate desire for discovery with Ecogen's legitimate fear of financial ruin arising out of that disclosure. *Id.; ITT Electro-Optical Products Div. of ITT Corp. v. Electronic Technology Corp.,* 161 F.R.D. 228, 231–32 (D.Mass.1995). Our task is to fashion a *via media* between these two competing needs, and, in so doing, "[t]he court's common sense is a helpful guide." *Pulsecard, Inc. v. Discover Card Serv., Inc.,* 1995 WL 526533, at *7 (D.Kan. Aug. 31, 1995) (quoting *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,* 529 F.Supp. 866, 891 (E.D.Pa.1981)).[7]

### A. *The Relevance of the Documents that Mycogen Seeks*

■ Mycogen's subpoenas—limited to the time after the '831 patent issued—seek information relevant to this action. The subpoenas ask, in essence, "What has Monsanto told you about the '831 patent?" *Cf. Compaq*

*Computer Corp. v. Packard Bell Electronics, Inc.,* 163 F.R.D. 329, 334 (N.D.Cal.1995). As is clear under the statute, Monsanto may be liable for patent infringement if it infringed the '831 patent *or* if it induced others to infringe that patent. 35 U.S.C. § 271(b). Thus, communications between Monsanto and Ecogen are central to that claim. *See Katz v. Batavia Marine & Sporting Supplies, Inc.,* 984 F.2d 422, 424 (Fed.Cir.1993) (noting the broad scope of the "liberal" federal discovery rules).

Nor may we limit the scope of the disclosure to communications regarding just the '831 patent. In his September order, Judge Jones noted that the doctrine of substantial equivalents would render Monsanto liable for infringement if it modified the '831 Bt gene to create a "new" gene with insubstantial differences from the '831 gene. Order, *Mycogen Plant Science, Inc. v. Monsanto Co.,* No. 95–653–J, at 7–8 (S.D.Cal. Sept. 22, 1995). Moreover, under the law of induced infringement, Monsanto could be liable if it induced Ecogen to modify the '831 gene with insubstantial differences. It follows, then, that communications between Monsanto and Ecogen regarding genes other than the '831 patent are relevant to Mycogen's infringement claim.

### B. *Ecogen's Trade Secrets*

We have little trouble concluding that much of Ecogen's Bt library has, and should have, trade secret protection. The company's vice-president and general counsel has described the intricate procedures through which Ecogen protects its gene library. For example, the company uses confidentiality agreements to limit the disclosure of its research. Ecogen mot. ex. J. (Deak aff. ¶ 13). Only four outside entities, including Monsanto, have had access to Ecogen's gene research. *Id.* Similar restrictions govern Eco-

---

7. *Balancing* is perhaps the wrong word to describe our task. In a thorough survey of relevant caselaw, one court has found that "discovery is virtually always ordered" and has therefore concluded that the balancing test "is tilted in favor of disclosure". *Coca–Cola Bottling Co. v. Coca–Cola Co.,* 107 F.R.D. 288, 292–93 (D.Del.1985). In dicta, the Supreme Court has also recognized that "[o]rders forbidding any disclosure of trade secrets or confidential commercial information are rare. More commonly, the trial court will enter a protective order restricting disclosure to counsel or to the parties." *Federal Open Market Committee v. Merrill,* 443 U.S. 340, 362 n. 24, 99 S.Ct. 2800, 2813 n. 24, 61 L.Ed.2d 587 (1979) (citation omitted); *see generally* 8 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2043 (2d ed. 1994).

gen employees' access to their employer's work product. *Id.* (Deak aff. ¶¶ 14–18). We are convinced that these procedures satisfy *Smith. See Smith,* 869 F.2d at 199–200.[8]

Mycogen correctly emphasizes, however, that a patented Bt gene is not a trade secret. Nor does a document discussing a trade secret, without more, constitute a trade secret. Ecogen's reliance on its trade secrets cannot defeat Mycogen's document requests entirely, since those requests reach unprotected, as well as protected, documents. With appropriate redactions, we see no bar to a limited production of documents.

### C. Mycogen's Need for the Documents

Finally, we conclude that Mycogen has shown a "substantial need" for the documents, within the meaning of Rule 45(c)(3)(B)(iii). Although Mycogen can pursue Monsanto for many of the same documents that it seeks from Ecogen, Mycogen can learn through its subpoena the fact of transmittal. That is, it is central to Mycogen's claim to learn whether Monsanto transmitted information to Ecogen, for that way infringement lies. Moreover, Ecogen may have internal documents relevant to Mycogen's claims. Mycogen should be able to see this information regardless of whether Monsanto received them or not. *See Coca–Cola Bottling Co. v. Coca–Cola Co.,* 107 F.R.D. 288, 292 (D.Del.1985) ("The level of necessity that must be shown is that the information must be necessary for the movant to prepare its case for trial, which includes proving its theories and rebutting its opponent's theories.").

### D. Balancing Considerations

#### 1. Unresolved Questions of Law, and Who Should Decide Them

As we have noted above, the parties continue to dispute the legal issues underlying Mycogen's lawsuit. Indeed, it appears that Monsanto has filed, or is going to file, a motion for partial summary judgment to clarify some of these issues. 1/12/96 Hrg.Tr. at 159–60. Judge Papas, therefore, has decided not to allow Mycogen to pursue pre-issuance discovery, *i.e.,* before January 10, 1995, until Judge Jones resolves this latest motion. *Id.* Mycogen and Monsanto appear to agree that this case presents several unique issues of law, each of which could widen or narrow the scope of discovery.

The resolution of these difficult issues is for the California Court, not us. One district court has noted:

> A district court whose only connection with a case is supervision of discovery ancillary to an action in another district should be especially hesitant to pass judgment on what constitutes relevant evidence thereunder.

*Compaq Computer Corp.,* 163 F.R.D. at 335 (internal quotation marks omitted) (citing *Truswal Sys. Corp. v. Hydro–Air Eng'g, Inc.,* 813 F.2d 1207, 1211–12 (Fed.Cir.1987)). The ancillary court should take its law of the case from the non-ancillary court and should avoid influencing that court's view of the legal issues. *Id.; cf. Hayman Cash Register Co. v. Sarokin,* 669 F.2d 162, 168–69 (3d Cir.1982).[9]

Here, we read the opinion of Judge Jones and the transcripts before Judge Papas to establish only that post-issuance evidence is relevant to Mycogen's claims. If Judge

---

8. Pennsylvania law governs this inquiry. *Smith,* 869 F.2d at 199 n. 5.

The parties have spilt much ink arguing over whether Ecogen and Mycogen are direct competitors. It seems fairly clear to us that the two companies do compete directly, at least in part. *Compare* Ecogen mot. ex. J (Deak aff. ¶ 6) *with* Walker decl. ¶¶ 4–5. In our view, however, this issue is tangential, since the harm that Ecogen postulates would arise from disclosure itself, whether to a competitor or an unskilled layman. Mycogen's ability to capitalize on disclosure of Ecogen's trade secrets would only bring about

that harm more quickly than disclosure to a layman.

9. *Compaq* correctly rejects the position that a non-party normally lacks standing to assert defenses of irrelevance or immateriality. *Compaq Computer Corp. v. Packard Bell Electronics, Inc.,* 163 F.R.D. 329, 335–36 (N.D.Cal.1995) ("Obviously, if the sought-after documents are not relevant nor calculated to lead to the discovery of admissible evidence, then *any burden whatsoever* imposed … would be by definition 'undue'.") (emphasis in original). To its credit, Mycogen does not take such a position in this action.

Jones or Judge Papas rules that Mycogen is entitled to a broader universe of documents, we will allow Mycogen to enforce their subpoenas to that extent. Until that time, however, just as it was improper for Mycogen to ask Judge Papas to rule on the subpoenas that it had issued to Ecogen, 1/12/96 Hrg.Tr. at 161–65, so it would be improper for us to address the patent issues in this case.

### 2. Ecogen's Status as a Non–Party

Ecogen is also particularly vulnerable because it is not a party to the underlying dispute. One court of appeals has recognized that the "fact of non-party status" is a "significant factor" in the decision to require disclosure of trade secrets. *Katz,* 984 F.2d at 424 ("Although Rule 26(b) applies equally to discovery of nonparties, the fact of nonparty status may be considered in weighing the burdens imposed in the circumstances."). Ecogen has no power to press its view of patent law on the California court, and it must accept the law that issues from that court. We therefore bear a special responsibility to alleviate the risk that the subpoenas present to Ecogen. We must therefore reject Mycogen's arguments in favor of broad disclosure. It is for Ecogen, not Mycogen, to decide how Ecogen will bring its Bt genes to the marketplace. As Judge Patterson has understated, courts should be "concerned that litigation tactics not be adopted with a view to improve a · client's competitive position." *Quotron Sys., Inc.,* 141 F.R.D. at 41.

■ The federal discovery rules also require us to "assure[ ] that the person to whom the subpoena is addressed will be reasonably compensated" for the burden of disclosure. Fed.R.Civ.P. 45(c)(3)(B)(iii). Here, we feel that Mycogen should compensate Ecogen for its time and labor in producing the documents and sitting for the depositions. As we have noted, Mycogen could likely obtain from Monsanto much of what it now seeks from Ecogen. If Mycogen wishes to proceed against a non-party rather than a party, it should pay for the burden of Ecogen's response:

Although party witnesses must generally bear the burden of discovery costs, the rationale for the general rule is inapplicable where the discovery demands are made on non-parties. Nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party.

*United States v. Columbia Broadcasting Sys.,* 666 F.2d 364, 371 (9th Cir.), *cert. denied,* 457 U.S. 1118, 102 S.Ct. 2929, 73 L.Ed.2d 1329 (1982), *cited in Compaq Computer Corp.,* 163 F.R.D. at 339; *see also In re Letters Rogatory Issued by the National Court of First Instance in Commercial Matters N. 23 of the Federal Capital of the Argentinean Republic,* 144 F.R.D. 272, 278 (E.D.Pa.1992).[10]

### 3. Future Steps

We recognize that Mycogen is caught in a difficult circle. It has very few facts to support its infringement claims, yet Ecogen (and Monsanto) are using that lack of information as a reason to bar the company from attempting to obtain the very information it believes exists. We have tried to find the right *via media* between Mycogen's legitimate need for information to support its claims and Ecogen's legitimate need for trade secret protection. As the California Court resolves the legal issues that the underlying action presents, Mycogen's right (or lack thereof) to Ecogen's documents will likely become clearer.

Thus, although we will enforce Mycogen's subpoenas only in part, we will not yet quash those subpoenas to the extent we have not enforced them. Rather, we invite Mycogen to return to this Court for further enforcement of its subpoenas as the California court sifts through this action, or if today's discovery supports a more detailed investigation.

---

10. The Advisory Committee has codified the holding of *Columbia Broadcasting* in its 1991 amendment to Rule 45. *See* Fed.R.Civ.P. 45 (Advisory Committee notes to the 1991 amendment) ("A non-party required to produce documents or materials is protected against significant expense resulting from involuntary assistance to the court.").

## IV. *Scope of the Production*

We will therefore enforce Mycogen's subpoenas to the following extent:

1. By March 15, 1996, Ecogen shall produce all correspondence created after January 10, 1995 from it to Monsanto, or from Monsanto to it, regarding Bt toxin genes or Bt toxins. In producing this correspondence, Ecogen may redact any nucleotide sequence, or other information or data that would reveal the composition of the Bt gene or genes discussed.

2. By March 15, 1996, Ecogen shall produce any document created after January 10, 1995 that mentions the '831 patent, or Mycogen Plant Science, Inc., or Agrigenetics, Inc., or any employee of those two companies. In producing these documents, Ecogen may redact any nucleotide sequence, or other information or data that would reveal the composition of any Bt gene other than the '831 gene.

3. By March 15, 1996, Ecogen shall produce all documents responsive to the question, "What has Monsanto told you about the '831 patent?"[11] In producing these documents, Ecogen may redact any nucleotide sequence or other information or data that would reveal the composition of any gene other than the '831 gene.

4. Drs. Leigh English and Bruce Carlton shall appear for depositions during the week of April 1, 1996, but they need not answer questions regarding the nucleotide sequence of any gene or genes other than the '831 gene. They also need not answer any question that deals with pre-issuance matters.

5. If Ecogen believes that documents subject to production disclose trade secrets (even after redaction) or are otherwise subject to privilege, it shall, on March 11, 1996, deliver a copy of those documents to Chambers for *in camera* review. In its transmittal letter, Ecogen shall describe the claims of privilege with respect to each document, but it shall not attempt to relitigate the issues that we have decided today.

6. By March 1, 1996, counsel shall meet and fashion a confidentiality order governing who may review any documents that Ecogen produces.

Counsel will observe that these instructions do not allow for investigation into actual genes and nucleotide sequences other than the '831 gene. As we have noted, we recognize that genes and nucleotide sequences other than the '831 gene are relevant under the doctrine of substantial equivalents, but we believe that discovery into these areas is not yet appropriate. If Ecogen is in fact *not* producing substantial equivalents, then discovery on this issue would require the bald disclosure of trade secrets. Again, perhaps we will allow such discovery in the future, but until Mycogen can make a stronger showing, such discovery must await another day. For now, the balance tips against disclosure.[12]

## V. *Conclusion*

Perhaps Monsanto and Ecogen have conspired to rob Mycogen of its patent and deprive it of the riches that it expected to flow therefrom. Perhaps Monsanto merely wanted to enter the Bt gene market, and Mycogen, a rejected suitor, now seeks to exact a costly revenge from the newly-joined couple. We are unwilling to draw either conclusion without more information. Our Order today will allow Mycogen to bolster its claims of infringement without stripping Ecogen of its trade secret protection. After this first round of disclosure, Mycogen may return to us for further discovery. Mycogen will need to show more than it has, however, before we will force Ecogen to share the essence of its business with a competitor.

An appropriate Order follows.

---

11. We caution Ecogen that its response to this question is subject to Rule 11 and our contempt power, and the company should therefore not respond to this question as it might if a party asked it.

12. Mycogen should recognize that it also benefits from our incremental approach. If we order discovery of nucleotide sequences and genes in the future, Mycogen will likely bear the cost of that disclosure as well (including, *inter alia,* the cost of any court-appointed experts). Our approach today will allow Mycogen to weigh the costs and benefits of additional discovery before pursuing Ecogen further.

*ORDER*

AND NOW, this 16th day of February, 1996, upon consideration of the motions of non-party Ecogen, Inc., (1) to quash the subpoenas of Mycogen Plant Science, Inc., and Agrigenetics, Inc. (collectively "Mycogen"), and (2) for a protective order, and the response and reply thereto, and in accordance with the accompanying Memorandum, it is hereby ORDERED that:

1. The motions to quash the subpoenas and for a protective order are DENIED IN PART, and discovery shall proceed in accordance with part IV of the accompanying Memorandum;

2. Mycogen is GRANTED LEAVE to move this Court for further discovery after completion of the discovery in paragraph one of this Order, and, if Mycogen files such a motion, Ecogen, Inc., shall respond within the time provided under the Local Rules of Civil Procedure; and

3. Ecogen, Inc., shall scrupulously maintain records of the time and materials it expends in complying with this Order, and the company is GRANTED LEAVE, after compliance, to apply to the Court for an award of costs and fees, and, if the company files such a motion, Mycogen shall respond within the time provided under the Local Rules of Civil Procedure.